# Illinois Official Reports

## Supreme Court

***People v. Smith*, 2014 IL 115946**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WILLIAM SMITH, Appellant. |
| Docket No. | 115946 |
| Filed | December 4, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A postconviction petitioner convicted of murder by accountability did not show the prejudice requisite to the granting of leave to file a successive postconviction petition where his new claim was that his attorneys on direct appeal and on the first petition were ineffective in failing to assert that there was no trial evidence that he had been armed despite a prosecutorial opening statement that there would be, but where this inconsistency was pointed out by defense counsel at closing, the jury was instructed that arguments are not evidence, and the State acknowledged defendant's lack of armament in explaining accountability principles. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. William G. Lacy, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Brian W. Carroll, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, and Michele Grimaldi Stein, Assistant State's Attorneys, of counsel), for the People.

Justices

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, William Smith,[1] appeals from a judgment of the circuit court of Cook County denying him leave to file a successive *pro se* petition for relief under section 122-1(f) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(f) (West 2008)). The issue in this case focuses on the interpretation of section 122-1(f) of the Act. The trial court denied defendant leave to file a successive postconviction petition, finding that he failed to meet the cause-and-prejudice test. The appellate court affirmed. 2013 IL App (1st) 111069-U. We allowed defendant's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2013)). We affirm the judgments of the appellate court and the circuit court of Cook County.

¶ 2                                BACKGROUND

¶ 3    Defendant and codefendant, Marlan Barber, along with three other men (the group), were indicted on charges of first degree murder and aggravated discharge of a firearm in the 1998 shooting death of 14-year-old Deon Alexander. Defendant and Barber were tried simultaneously by two different juries before the same judge in severed trials. During opening statements, the prosecutor told the jury that it would "present the testimony of several young men" who saw defendant immediately prior to the shooting emerge from a gangway while holding a gun, and that one of the young men identified defendant in a lineup as one of the people who had a gun prior to the shooting.

¶ 4    At trial, Steven Small testified that on November 12, 1998, at 7 p.m., he and his friends, Deon Alexander (the victim), Darryl Jones, and Daniel Hudson, were standing near the corner of 57th and Peoria Streets. Small indicated that he and Deon Alexander were 14 years old on

---

[1]The record indicates that defendant's legal name is Ricky Harris.

the night of the shooting. Small stated that a group of older boys stood on the sidewalk about three to four houses down, or about 20 feet away from where Small and Hudson were standing. Small saw a cream colored station wagon with black tinted rear windows drive onto the street. The station wagon stopped on Peoria Street, and five or six men exited the car and started arguing with the older boys who were standing down the street. Eventually, a woman came out of her house and told the group to stop fighting. The men who had been in the car said they would be back, threw a bottle at the boys on the sidewalk, returned to the station wagon, and drove north on Peoria Street.

¶ 5        A short time later, Small saw some men walking toward where he was standing, across the street on the sidewalk. Small heard gunshots and then saw the station wagon drive past on Peoria Street. Small stated that he saw the station wagon twice on the street that night: once prior to the argument and again as the shots went off. Small later identified defendant in a lineup as one of the individuals who got into the station wagon after the argument on the street.

¶ 6        Small admitted he was reluctant to come to court and that a petition for contempt had been filed against him for his failure to respond to subpoenas. Small identified defendant in court as the person he previously identified in the lineup on the night of the shooting. Small further identified the station wagon from photograph exhibits presented by the State.

¶ 7        Daniel Hudson testified that he knew one of the older boys who was standing several houses away as "Joval." Hudson stated that a "gang of guys" drove up in a brown station wagon, got out, and began arguing with the older boys and Joval. Hudson stated that Barber approached Joval and Joval said to him, "if you swing, you better knock me out." The guys got back into their car and drove away after Barber said, "We'll be back." A few minutes later, Hudson saw the station wagon drive slowly back down Peoria Street. This time, only one or two persons occupied the car. As the station wagon passed Hudson and his friends, he heard gunshots but did not see the source of the gunshots. Hudson ran to get away and heard the victim, Deon Alexander, fall behind him. Hudson also identified the State's photograph exhibits of the station wagon as the car he saw on the night of the shooting.

¶ 8        Chicago police officer John Paulson testified that he found eleven 9-millimeter cartridge cases and five .45-caliber cartridge cases on the 5700 block of Peoria Street. Beth Patty, an expert in firearms identification, testified that the .45-caliber cartridge cases were all fired from the same gun and that the 9-millimeter cartridge cases were also fired by the same weapon. Medical examiner Dr. John Denton testified that the victim died as a result of a gunshot that severed his aorta.

¶ 9        Assistant State's Attorney Ron DeWald testified that defendant was in custody when he arrived at police headquarters around 9 p.m. on November 13, 1998. DeWald read defendant his *Miranda* rights and ensured that defendant understood his rights. According to DeWald, defendant said he was willing to speak with DeWald and opted to provide a handwritten statement. Defendant told DeWald that he was treated fine by the police and that he was fed and allowed to use the restroom. After DeWald wrote out the statement, defendant read every page, signed the pages, and made and initialed corrections.

¶ 10        The evidence presented at trial included defendant's statement detailing his participation in the group's plan to shoot two people. The plan required defendant to drive the group to retrieve

two guns and then approach the intended victims while other members of the group would shoot them. Defendant's statement was read to the jury.[2]

¶ 11   The jury found defendant guilty of first degree murder and aggravated discharge of a firearm based on a theory of accountability. He was sentenced to concurrent terms of 28 and 15 years' imprisonment.

¶ 12   On appeal, defendant contended that: (1) the trial court improperly denied his motion to quash arrest and suppress evidence; (2) he was not properly found accountable for first degree murder and aggravated discharge of a firearm; and (3) he was denied a fair trial when, during the rebuttal closing argument, the prosecutor commented on the failure of certain State's witnesses to testify as she had indicated they would in her opening argument. The appellate court affirmed the trial court's judgment on direct appeal. *People v. Smith*, No. 1-02-0721 (2003) (unpublished order under Supreme Court Rule 23).

¶ 13   On September 10, 2004, defendant filed a *pro se* petition for postconviction relief, alleging ineffective assistance of trial counsel for failing to investigate his claim that he suffered from a mental disability and asserting that his sentence was unconstitutional. Defendant alleged that he informed his counsel that he was diagnosed as mentally retarded. Defendant claimed he did not understand his *Miranda* rights and, although he responded affirmatively to understanding those rights, "one of the traits of petitioner's particular mental deficiency is that petitioner would often agree or give responses that he thought others wanted to hear, whether it is correct or not." Defendant attached documentation from the Social Security Administration indicating defendant was found disabled due to mental retardation, with current verbal IQ of 72; performance IQ of 79; and full-scale IQ of 74. Defendant asserted that this information would have been relevant to his "understanding of his right to remain silent, and the statement he allegedly made upon arrest," and that it would have "enlightened the court" as to his fitness to stand trial, his ability to assist trial counsel, and his ability to "fully understand[ ] what was happening at trial."

¶ 14   Defendant also attached a signed affidavit from his mother and designated Social Security payee, Rochella Harris. Harris stated that defendant was diagnosed as mentally retarded at a young age, that defendant is "easily influenced" and "has the tendency of trying to please others and will do and say what they want him to, for their approval," and that people often "try to take advantage of him."

¶ 15   Defendant's petition was advanced to the second stage of review and postconviction counsel was appointed to represent defendant in the proceedings. On February 26, 2009, counsel filed a Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984)) certificate indicating he consulted with defendant, he reviewed the case, and that an amended petition was not necessary because defendant adequately set forth his claims in his *pro se* petition. The trial court granted the State's motion to dismiss the petition, finding defendant failed to make a substantial showing that his constitutional rights were violated. The appellate court affirmed the dismissal on appeal. *People v. Smith*, 2012 IL App (1st) 101479-U.

¶ 16   On March 8, 2011, defendant filed a motion for leave to file a successive postconviction petition, along with a successive petition. Defendant claimed he received: (1) ineffective assistance of appellate counsel who, on direct appeal, failed to raise the issue of improper

---

[2]Defendant's statement was not included in the record submitted to this court.

comments by the prosecutor during opening statements; and (2) inadequate representation by postconviction counsel, who failed to amend his initial *pro se* petition to include a claim of ineffective assistance of appellate counsel. Defendant maintained that he was impeded in raising those claims in his initial petition because of his low IQ. For support, defendant attached a 1997 letter from the Social Security Administration stating that he was "found to be disabled with an onset of 9/01/78 due to mental retardation." The trial court denied defendant leave to file his successive postconviction petition, finding that he failed to meet the cause-and-prejudice test.

¶ 17     On appeal, defendant contended that the circuit court erred in denying his motion for leave to file a successive postconviction petition. Defendant argued that the standard applicable to first-stage dismissals of postconviction petitions should be applied to successive petitions in determining whether a defendant has demonstrated cause and prejudice.

¶ 18     The appellate court affirmed. 2013 IL App (1st) 111069-U. The appellate court determined that a defendant must make a "more exacting" showing of cause and prejudice to merit leave to file a successive petition. The appellate court held that defendant was required to satisfy both prongs of the cause-and-prejudice test.

¶ 19     The appellate court found that defendant failed to satisfy the prejudice prong. The court noted that both of defendant's claims stemmed from his allegation that he was prejudiced by the prosecutor's reference during opening statements to testimony placing a gun in defendant's hand on the night of the shooting, when that testimony was not later presented at trial. The appellate court concluded that the misstatement by the prosecutor was not deliberate and that defendant was not prejudiced by the misstatement because the trial court twice instructed the jury that an opening statement is not evidence. The appellate court, therefore, held that the trial court did not err in denying defendant leave to file his successive postconviction petition. This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013).

¶ 20                                              ANALYSIS

¶ 21     On appeal, defendant contends that the circuit court erred in denying his motion for leave to file a successive postconviction petition. The issue in this case is the interpretation of section 122-1(f) of the Act. 725 ILCS 5/122-1(f) (West 2008). We review this issue of statutory construction *de novo*. *People v. Davison*, 233 Ill. 2d 30, 40 (2009).

¶ 22     The Act provides a method for criminal defendants to assert that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2008). "A proceeding under the Act is a collateral attack on the judgment of conviction." *People v. Wrice*, 2012 IL 111860, ¶ 47.

¶ 23     Section 122-1(f) of the Act addresses successive postconviction petitions, as follows:

"(f) Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial

- 5 -

post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2008).

¶ 24 When construing a statute, this court's primary objective is to give effect to the legislature's intent. *People v. Greer*, 212 Ill. 2d 192, 208 (2004). "[S]ection 122-1(f) was clearly intended by the General Assembly to codify the cause-and-prejudice test adopted by this court in *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002), and thus evinces an intent to limit the filing of both successive and frivolous postconviction petitions." *People v. Tidwell*, 236 Ill. 2d 150, 156 (2010).

¶ 25 Defendant contends that section 122-1(f) should be interpreted "such that the determination of whether to grant leave to file a successive petition occurs in conjunction with the first-stage proceedings, and that leave should be granted where the pleadings make an arguable showing of cause and prejudice." Defendant raises the same issue of the applicable standard for successive postconviction petitions as was raised in *People v. Evans*, 2013 IL 113471. As this court observed in *Evans*:

"When it enacted section 122-1(f), the legislature grafted into the Act two new requirements: the obtaining of leave to file a successive postconviction petition, and the demonstration of cause and prejudice. In doing this, however, the legislature made no provision for when or precisely how a successive postconviction petitioner satisfies these requirements. For example, is cause and prejudice evaluated *prior to* the first stage of postconviction proceedings, or *in conjunction with* the first stage of postconviction proceedings? Does a successive postconviction petitioner 'demonstrate' cause and prejudice by adequately pleading it, or by actually proving it? And if by actually proving it, what provision is there for the presentation of evidence? Is cause and prejudice a one-sided question, or may the State contest a cause and prejudice claim? These are just some of the questions that section 122-1(f) raises, and the Act answers none of them. *** In light of this, we would invite the legislature to seize the window of opportunity that this case provides and, sometime before the next such case arrives on our docket, enact a more complete statutory framework for successive postconviction practice. Because the next case *will* arrive, and when it does, our analysis will be governed either by the legislature's judgment or by our own. We would prefer it be the legislature's." (Emphases in original.) *Evans*, 2013 IL 113471, ¶ 18.

¶ 26 In *Evans*, this court did not address the issues on the construction of section 122-1(f) because we found the defendant's alleged cause for failing to raise his claim earlier was insufficient. In *Evans*, the defendant's proffered "cause" was that he "just discovered" he would be subject to a three-year mandatory supervised release (MSR) term following his release from imprisonment. Defendant essentially claimed he was ignorant of the law. This court stated, "[i]mportant as these arguments [on the construction of section 122-1(f)] are [citation], we need not address either of them in this case. This is because, in his motion for leave to file the successive petition, defendant asserts as 'cause' something that, as a matter of law, can never be 'cause.' " *Evans*, 2013 IL 113471, ¶ 12.

¶ 27 The arguments presented by defendant in this appeal are essentially the same as those presented by the defendant in *Evans*. Regrettably, the legislature still has not provided any guidance, and this lack of guidance has caused confusion and conflict in our courts. See *People*

*v. LaPointe*, 365 Ill. App. 3d 914, 924 (2006) (holding that a section 122-1(f) motion "need state only the gist of a meritorious claim of cause and prejudice"), *aff'd on other grounds*, 227 Ill. 2d 39 (2007); *People v. Evans*, 2011 IL App (1st) 100391-U, ¶ 13 (rejecting *LaPointe*, and finding that a stricter standard applies to *pro se* successive petitions); *People v. Smith*, 2011 IL App (1st) 091938-U, ¶¶ 15-17 (rejecting *LaPointe*); *People v. McKinley*, 2012 IL App (1st) 110513-U, ¶¶ 13-15 (rejecting *LaPointe*); *People v. Edwards*, 2012 IL App (1st) 091651, ¶¶ 21-22 (rejecting *LaPointe*); *People v. Files*, 2012 IL App (2d) 110012-U, ¶ 12 (noting disagreement).

¶ 28    Section 122-1(f) contains no express provision for fully resolving the cause-and-prejudice determination prior to proceeding with the three-stage postconviction process outlined in the Act. Section 122-1(f) does not answer whether a successive postconviction petitioner must demonstrate cause and prejudice by actively *pleading* it, or by actually *proving* it. If the petitioner is required to prove cause and prejudice, section 122-1(f) does not provide a method for presentation of evidence.

¶ 29    From a practical standpoint, if a petitioner is required to establish cause and prejudice conclusively prior to being granted leave to file a successive petition, it may render the entire three-stage postconviction process superfluous. Section 122-1(f) does not provide that a petitioner is entitled to relief upon satisfaction of the cause-and-prejudice test. It only gives a petitioner an avenue for filing a successive postconviction petition. The legislature clearly intended for further proceedings on successive postconviction petitions.

¶ 30    The State cites *People v. Edwards*, 2012 IL 111711, to support its position that first-stage standards are inapplicable when considering a motion for leave to file a successive postconviction petition. *Edwards* involves the standard a petitioner who claims actual innocence must meet in seeking leave to file a successive postconviction petition. *Edwards* recognizes two exceptions to the bar against successive postconviction proceedings: (1) "when a petitioner can establish 'cause and prejudice' for the failure to raise the claim earlier"; and (2) under "what is known as the 'fundamental miscarriage of justice' exception." *Edwards*, 2012 IL 111711, ¶¶ 22-23 (citing *Pitsonbarger*, 205 Ill. 2d at 459). In *Edwards*, this court observed that *Tidwell* noted that "a petitioner seeking to institute a successive postconviction proceeding must first obtain 'leave of court.' " *Edwards*, 2012 IL 111711, ¶ 24 (quoting *Tidwell*, 236 Ill. 2d at 157). "We also made clear in *Tidwell* that it is the petitioner's burden to obtain 'leave' before further proceedings on his claims can follow." *Edwards*, 2012 IL 111711, ¶ 24 (citing *Tidwell*, 236 Ill. 2d at 157). We recognized that "[d]efendant not only has the burden to obtain leave of court, but also 'must submit enough in the way of documentation to allow a circuit court to make that determination.' [Citation.] This is so under either exception, cause and prejudice or actual innocence." *Edwards*, 2012 IL 111711, ¶ 24. In *Edwards*, this court rejected the defendant's argument that first-stage standards should apply in evaluating his successive postconviction petition claiming actual innocence, stating:

"First, applying the frivolous or patently without merit standard here would render the 'leave of court' language in section 122-1(f) superfluous. We have repeatedly held that statutes should be read as a whole and construed so that no part is rendered meaningless or superfluous. *E.g.*, *People v. Jones*, 214 Ill. 2d 187, 193 (2005).

Second, there is simply no basis in the statute for applying a first-stage analysis to a *successive* petition. Section 122-1(f), which governs successive petitions, describes the

'leave of court' requirement but makes no mention of the frivolous or patently without merit standard, which is set forth in a separate provision, section 122-2.1(a)(2). The legislature was clearly aware of the frivolous or patently without merit language in 2004, when section 122-1(f) was added, and could have incorporated it into that section if it chose to do so. Where language is included in one section of a statute but omitted in another section of the same statute, we presume the legislature acted intentionally and purposely in the inclusion or exclusion." (Emphasis in original.) *Edwards*, 2012 IL 111711, ¶¶ 26-27 (citing *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 24; 2A Norman J. Singer & J.D. Shambie Singer, Sutherland on Statutory Construction § 46:5, at 228-29 (7th ed. 2007) ("where the legislature has employed a term in one place and excluded it in another, it should not be implied where excluded").

¶ 31    In *Edwards*, this court also discussed the legislative history of section 122-1(f), and concluded that the legislative history shows that section 122-1(f) was intended to make Illinois law consistent with federal law and not apply the first-stage standards under the Act to successive postconviction petitions. *Edwards*, 2012 IL 111711, ¶ 28. We further recognized that "[a]nother reason for rejecting the first-stage standard is that treating successive petitions the same as initial petitions *** ignores the well-settled rule that successive postconviction actions are disfavored by Illinois courts." *Edwards*, 2012 IL 111711, ¶ 29.

¶ 32    *Edwards*, however, only addressed the process for the fundamental miscarriage of justice exception in a claim of actual innocence. Although this court made statements regarding the cause-and-prejudice test, this court did not address the cause-and-prejudice exception provided in section 122-1(f), as it was not at issue in *Edwards*. In fact, our subsequent decision in *Evans* recognized that the issue of the legal standard applicable for a petitioner to demonstrate cause and prejudice involved important deficiencies in the Act that we were unable to reach. The precise issue raised in *Evans* and in this case was not raised or resolved in *Edwards*. Nonetheless, we note that, in *Edwards*, this court stated that "[d]efendant not only has the burden to obtain leave of court, but also 'must submit enough in the way of documentation to allow a circuit court to make that determination.' " *Edwards*, 2012 IL 111711, ¶ 24 (quoting *Tidwell*, 236 Ill. 2d at 161).

¶ 33    Section 122-1(f) unambiguously requires a defendant to obtain leave of the trial court prior to filing a successive postconviction petition. The trial court may grant leave to file a successive postconviction petition under section 122-1(f) only if the petitioner demonstrates cause for the failure to bring the claim in the initial postconviction proceedings and that prejudice results from that failure. Section 122-1(f) further provides that "(1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2008). Section 122-1(f) does not provide for an evidentiary hearing on the cause-and-prejudice issues and, therefore, it is clear that the legislature intended that the cause-and-prejudice determination be made on the pleadings prior to the first stage of postconviction proceedings.

¶ 34        As noted, section 122-1(f) was intended by the General Assembly to codify the cause-and-prejudice test adopted by this court in *Pitsonbarger*, 205 Ill. 2d 444. *Supra* ¶ 24. In *Pitsonbarger*, this court specifically held "that the cause-and-prejudice test is the analytical tool that is to be used to determine whether fundamental fairness requires that an exception be made to section 122-3 so that a claim raised in a successive petition may be considered on its merits." *Pitsonbarger*, 205 Ill. 2d at 459. We analogized the cause-and-prejudice test in the context of a successive postconviction petition to the cause-and-prejudice test for ineffective assistance of counsel articulated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Pitsonbarger*, 205 Ill. 2d at 464. "To support a claim of ineffective assistance of counsel, a defendant must *allege facts demonstrating* that his attorney's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (Emphasis added.) *People v. Patterson*, 192 Ill. 2d 93, 107 (2000) (citing *Strickland*, 466 U.S. at 687, 695). Similarly, a defendant's *pro se* motion for leave to file a successive postconviction petition will meet the section 122-1(f) cause and prejudice requirement if the motion adequately alleges facts demonstrating cause and prejudice.

¶ 35        This court was clear, however, in *Edwards*, that the cause-and-prejudice test for a successive petition involves a higher standard than the first-stage frivolous or patently without merit standard that is set forth in section 122-2.1(a)(2) of the Act. *Edwards*, 2012 IL 111711, ¶¶ 26-27. To meet the cause-and-prejudice test for a successive petition requires the defendant to "submit enough in the way of documentation to allow a circuit court to make that determination." *Tidwell*, 236 Ill. 2d at 161. "This is so under either exception, cause and prejudice or actual innocence." *Edwards*, 2012 IL 111711, ¶ 24. Consistent with our holdings in *Pitsonbarger*, *Tidwell*, and *Edwards*, we conclude that leave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings. See, *e.g.*, *Pitsonbarger*, 205 Ill. 2d at 463 ("a petitioner must establish cause and prejudice as to each individual claim asserted in a successive petition"); *Tidwell*, 236 Ill. 2d at 161 (a defendant seeking leave to institute a successive postconviction "must submit enough in the way of documentation to allow a circuit court to make that determination"); *Edwards*, 2012 IL 111711, ¶ 24 ("leave of court should be denied only where it is clear, from a review of the successive petition and the documentation provided by the petitioner" that the petitioner's claims fail as a matter of law).[3]

¶ 36        Here, defendant's motion for leave to file a successive postconviction petition alleged: (1) ineffective assistance of appellate counsel who, on direct appeal, failed to raise the issue of improper comments by the prosecutor during opening statements; and (2) inadequate representation by postconviction counsel, who failed to amend his initial *pro se* petition to include a claim of ineffective assistance of appellate counsel. Defendant maintained that he was impeded in raising those claims in his initial *pro se* postconviction petition because of his low IQ. For support, defendant attached a 1997 letter from the Social Security Administration stating that he was "found to be disabled with an onset of 9/01/78 due to mental retardation."

_____

[3]The parties have not argued or briefed whether the trial court may consider the record in ruling on a petition brought under section 122-1(f) of the Act. Accordingly, we do not address that issue.

¶ 37    The appellate court determined that defendant did not satisfy the prejudice prong of the cause-and-prejudice test. 2013 IL App (1st) 111069-U, ¶ 14. As this court recognized in *Pitsonbarger*, to establish prejudice, defendant must show that the claim not raised in his initial postconviction petition "so infected the entire trial that the resulting conviction or sentence violates due process." *Pitsonbarger*, 205 Ill. 2d at 464 (citing *People v. Flores*, 153 Ill. 2d 264, 279 (1992)). Defendant submits that his right to due process was violated by the prosecutor's comment that a witness would testify that he had a gun on the night of the shooting and that the witness identified him in a lineup as one of the people who had a gun in his hand right before the shooting. However, it is undisputed that the trial court twice instructed the jury that an opening statement is not evidence and, following closing argument, advised the jury that "[n]either opening statement nor closing arguments are evidence, any statement or argument made by the attorneys which is not based on the evidence should be disregarded." Moreover, during closing argument, the prosecutor acknowledged that defendant did not have a gun on the night of the incident, and then discussed the principles of accountability. Defense counsel also pointed out in his closing argument the inconsistency between the State's opening and closing arguments. Thus, the jury was made aware during closing arguments that defendant did not have a gun on the night of the incident, and defendant was convicted under a theory of accountability. Accordingly, defendant's claim that the prosecutor committed reversible error due to his comments during opening statements could not have "so infected the entire trial that the resulting conviction or sentence violates due process." *Pitsonbarger*, 205 Ill. 2d at 464 (citing *People v. Flores*, 153 Ill. 2d 264, 279 (1992)). Thus, defendant failed to satisfy the prejudice prong of the cause-and-prejudice test. Defendant's underlying claim has no merit and, necessarily, defendant's postconviction counsel and appellate counsel cannot be ineffective for failing to raise the meritless claim. Having concluded that defendant cannot show prejudice, we need not address defendant's claim of cause. We therefore affirm the lower courts' determinations that defendant failed to establish the prejudice prong of the cause-and-prejudice test and, as a result, we affirm the trial court's denial of defendant's motion for leave to file a successive postconviction petition.

¶ 38                                    CONCLUSION

¶ 39    For the foregoing reasons, we affirm the judgments of the appellate court and the circuit court of Cook County.

¶ 40    Affirmed.