2020 IL App (1st) 180322-U

SIXTH DIVISION
JUNE 5, 2020

No. 1-18-0322

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 10553 (01) |
| | ) | |
| DION BANKS, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Connors and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Dismissal of the defendant's postconviction petition at the first stage reversed where petition stated the gist of a *Brady* violation.

¶ 2    Defendant-appellant Dion Smith, convicted of first-degree murder and aggravated discharge of a firearm, appeals the first stage dismissal of his postconviction petition. On appeal, the defendant argues that he stated the gist of a claim that the Chicago police department's failure to turn over its 340-page street file concerning him prior to trial amounted to a *Brady* violation. For the reasons that follow, we reverse the judgment of the circuit court of Cook County and

remand the matter for second stage proceedings and the appointment of counsel to represent the defendant.

¶ 3                                                    BACKGROUND

¶ 4     On March 24, 2001, the defendant shot and killed Rose Newburn outside of Ford City Mall in front of her four- and five-year-old sons during the course of a carjacking.  The defendant left the scene in Newburn's car with her children in the backseat.  After driving for a short time, the defendant stopped the car and told the boys to jump out of the window, but then allowed them to leave through the door.  The boys hid behind a stop sign as the defendant drove away, and then returned to the mall where their mother was.

¶ 5     In addition to Newburn's five-year-old son, another witness saw the shooting and identified the defendant as the shooter.  Other witnesses also saw the defendant driving Newburn's car that day. During an interview with an assistant state's attorney two days after the shooting, the defendant confessed to the carjacking and murder.

¶ 6     In 2006, a jury convicted the defendant of first-degree murder and aggravated discharge of a firearm and also found him eligible for the death penalty. Following a hearing at which evidence in aggravation and mitigation was presented, the jury found no mitigating factors that would preclude the imposition of the death penalty.  The defendant appealed his conviction and sentence directly to the supreme court, which affirmed both in February 2010.  His sentence was commuted to life in prison in 2011.

¶ 7     On September 7, 2017, the defendant filed a postconviction petition in the circuit court of Cook County.  His petition alleged that he was contacted by attorney Candace Gorman, who uncovered a street file bearing the defendant's name during the course of her search for documents in her own client's case.  According to the defendant, that street file was never disclosed to his

trial counsel. Attached to the defendant's petition was the letter attorney Gorman sent to the defendant informing him of the existence of the street file as well as Gorman's own affidavit. Gorman averred that during the course of her representation of Nathson Fields in an unrelated civil rights claim, she discovered a homicide investigative file on Fields which contained "substantial exculpatory material" that had never been tendered to Fields or his prior counsel. She recovered the file in a cabinet in the basement of the police station at 51st Street and Wentworth Avenue in Chicago. That basement had over 20 other cabinets all containing homicide investigation files. Among the 466 files she recovered from that location was the file of the defendant in the instant case, containing 320 pages of "documents and photos." Gorman wrote to the defendant and informed him of the existence of the street file. She could not share the file directly with the defendant because of a court order, so she asked the defendant for the contact information for his current or previous attorney with whom she could share the file.

¶ 8    The defendant put Gorman in touch with Charles Schiedel, who was the deputy defender at the office of the State Appellate Defender when that office represented the defendant in his appeal to the Illinois supreme court. Schiedel also submitted an affidavit in support of the defendant's postconviction petition. In that affidavit, Schiedel averred that he was contacted by Gorman and signed the required non-disclosure forms in order to review the material in the defendant's street file. Scheidel also consulted Allen Andrews, who had been assigned to represent the defendant in his appeal before the Illinois supreme court. Based on that consultation and his review of the file provided by attorney Gorman, Schiedel believed that the material in the street file was not included in the appellate record sent to the Office of the State Appellate Defender. Further, Schiedel believed that the material in the file "could have had an impact on the issues of [the defendant's] guilt or innocence and/or his sentence."

¶ 9     Allen Andrews averred that he read the record on appeal while preparing the defendant's appeal to the Illinois supreme court and noted that the only evidence elicited at trial regarding the cause of Newburn's death was that after she was shot, "she was observed at the scene to be in shock, and that she died from a loss of blood caused by a gunshot wound."

¶ 10    On November 17, 2017, the circuit court dismissed the defendant's postconviction petition, finding that the defendant's claim that the State withheld exculpatory material in violation of *Brady* was "merely speculative and conclusory."  The court chastised the defendant for failing to support his claims with "factual details" or "specific information." The defendant appealed.

¶ 11                                    ANALYSIS

¶ 12    We note that we have jurisdiction to review this matter, as we allowed the defendant's late notice of appeal.  Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 13    The Post-Conviction Hearing Act (Act) allows a defendant who is imprisoned in a penitentiary to challenge his conviction or sentence for violations of his federal or state constitutional rights.  725 ILCS 5/122-1 (West 2016); see also *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005).  The Act establishes a three-stage process for adjudicating a postconviction petition. 725 ILCS 5/122-1.  During the first stage, at issue here, the circuit court must independently review the petition, taking the allegations as true, in order to determine whether the petition is frivolous or patently without merit.  *People v. Tate*, 2012 IL 112214, ¶ 9; 725 ILCS 5/122-2.1(a)(2) (West 2016)).  Because most postconviction petitions are drafted by *pro se* defendants, the threshold for a petition to survive the first stage is low.  *People v. Allen*, 2015 IL 113135, ¶ 24.  While a defendant must provide some factual support for his claims to show that they are capable of corroboration, those facts need only state the gist of constitutional claim.  *Id.*

¶ 14    A circuit court should only dismiss a petition as frivolous or patently without merit if it has "no arguable basis either in law or fact" and relies on "an indisputably meritless legal theory or a fanciful factual allegation." *People v. Hodges*, 234 Ill. 2d 1, 16, 17 (2009).  Meritless legal theories are those that are completely contradicted by the record, while a fanciful factual allegation is "fantastic or delusional." *Id.* at 17. We review a circuit court's dismissal of a petition at the first stage *de novo*. *People v. White*, 2014 IL App (1st) 130007, ¶ 8.

¶ 15    The parties in this case agree that the defendant's petition purports to allege a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), requiring the State to disclose material evidence favorable to the defendant. A successful *Brady* claim requires a defendant to show: (1) the withheld evidence was either exculpatory or impeaching; (2) the prosecutor either willfully or inadvertently suppressed the evidence; and (3) the evidence was material to guilt or punishment. *People v. Morales*, 2019 IL App (1st) 160225, ¶ 20. Of course, at the first stage of postconviction proceedings, the defendant need not *prove* a *Brady* violation, but only state the gist of a claim.

¶ 16    Here, the defendant did not attach the street file to his petition and therefore, could not allege that the evidence was either exculpatory or impeaching or that the evidence was material. Ordinarily, a postconviction petition must attach evidence in support of its claims in order to establish that the petition's allegations are capable of objective corroboration. *Hodges*, 234 Ill. 2d at 10.  But section 122-2 of the Act also permits a petitioner to explain, by way of affidavit, why evidence supporting his allegations cannot be attached.  725 ILCS 5/122-2 (West 2016).

¶ 17    In this case, attorney Gorman's affidavit provides that explanation.  She averred that a court order prevented her from sharing the street file with the defendant directly and she could only disclose it to his attorney.  The defendant took the additional step of securing an affidavit from his appellate counsel—who did review the file—in which counsel averred that the evidence "could

have had an impact on the issues of [defendant's] guilt or innocence and/or his sentence." While counsel does not explicitly state that the street file contained material exculpatory or impeachment evidence, we must construe the allegation liberally in favor of the defendant. See *People v. Morales*, 2019 IL 160225, ¶ 19. And construed liberally, we conclude that it is at least arguable, based on Schiedel's affidavit, that the street file contained evidence which may have impacted the defendant's guilt, innocence, or sentence.

¶ 18    With respect to whether the State suppressed the evidence, the defendant submitted an affidavit from appellate counsel indicating that he believed the street file was not part of the appellate record. While not all material disclosed to trial counsel necessarily becomes part of the record on appeal, there is other evidence that raises the inference that the evidence was withheld from trial counsel. Specifically, Gorman's affidavit indicates that her own client's street file contained exculpatory material that was not disclosed to his trial counsel. And Gorman's review of 60 of the 400 plus street files she uncovered revealed that 54—or 90%—of those files contained material that was not in the defense file. Jason Meisner, *Old police 'street files' raise question: Did Chicago cops hide evidence?*, Chicago Tribune (Feb. 13, 2016), https://www.chicagotribune.com/news/ct-chicago-police-street-files-met-20160212-story.html. Indeed, the State acknowledges that the Chicago police department has a long history of keeping non-disclosed street files separate from investigative files that are tendered to defense counsel. See, *e.g.*, *Palmer v. City of Chicago*, 755 F.2d 560 (7th Cir. 1985); *Jones v. City of Chicago*, 856 F. 2d 985 (7th Cir. 1988). While these facts may not *establish* that the street file was not disclosed to the defendant's trial counsel in the instant case, it is certainly at least *arguable* that the file was suppressed.

¶ 19    Finally, we are not persuaded by the State's argument that the allegation of suppression is contradicted by the record.  Specifically, the State points out that prior to trial, it certified that all material required to be disclosed pursuant to Illinois Supreme Court Rule 412 was tendered to defense counsel.  But this self-serving certification in no way contradicts the defendant's allegation that the State willfully suppressed the street file for purposes of bringing the matter under the *Brady* principle.  Illinois Supreme Court Rule 416 required the State to proffer this certification, but it is far from a fanciful factual allegation to suggest that notwithstanding the certification, the State nevertheless withheld material evidence.

¶ 20    Given the impossibility, at this stage, of including the allegedly withheld evidence itself, this *pro se* defendant has met his low burden of stating an arguable *Brady* claim.  Accordingly, the trial court erred in summarily dismissing his petition.

¶ 21                                    CONCLUSION

¶ 22    For the reasons stated, we reverse the circuit court of Cook County's dismissal of the defendant's postconviction petition and remand the case for further proceedings consistent with this opinion.

¶ 23    Reversed and remanded.