2026 IL App (1st) 241357

No. 1-24-1357

June 18, 2026

FIFTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 02 CR 12027 |
| | ) | |
| JERMAINE EVANS, | ) | The Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Presiding Justice Mitchell concurred in the judgment and opinion.
Justice Mikva specially concurred, with opinion.

**OPINION**

¶ 1        Defendant Jermaine Evans was convicted of first degree murder after a jury trial and sentenced to a total of 100 years with the Illinois Department of Corrections (IDOC). Defendant received 55 years for the murder, plus a consecutive firearm enhancement of 45 years for personally discharging the gun that proximately caused the death of Larry Simmons on April 11, 2002. This latest appeal by defendant concerns the trial court's denial of his motion for leave to file his third postconviction petition. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3          The facts established at defendant's trial were fully set forth by this court in one of our

prior opinions, and we incorporate that opinion by reference here. See *People v. Evans*, 373

Ill. App. 3d 948, 950-55 (2007) (direct appeal). As we observed before, "[o]n April 11, 2002,

Larry Simmons, age 17, was killed at the intersection of 68th Street and Normal Street in

Chicago's south side, as the culmination of a series of arguments that occurred between the

'68th Street Group' and the '69th Street Group.' " *Evans*, 373 Ill. App. 3d at 950. Defendant,

age 19, was a member of the 68th Street Group, while Simmons, who was two years younger,

was a member of the 69th Street Group. See *Evans*, 373 Ill. App. 3d at 950-51, 968. At trial,

defendant exercised his right to testify and admitted that he fired the gun that killed Simmons

and that he intended to shoot Simmons. *Evans*, 373 Ill. App. 3d at 955. At trial, defendant

claimed that he pulled out his gun and started firing at Simmons after Simmons pulled out his

gun. *Evans*, 373 Ill. App. 3d at 955. After the close of evidence and arguments, the jury was

instructed on first degree murder, second degree murder, and self-defense. *Evans*, 373 Ill. App.

3d at 955. The jury found defendant guilty of first degree murder and of personally discharging

the firearm that proximately caused Simmons's death. *Evans*, 373 Ill. App. 3d at 955. At

sentencing, after finding multiple aggravating circumstances, the trial court sentenced

defendant to an aggregate of 100 years. *Evans*, 373 Ill. App. 3d at 956. No issues regarding

sentencing are raised in the current appeal.

¶ 4          On his direct appeal, defendant raised a number of claims regarding his conviction

and his sentence. Both his conviction and sentence were affirmed by this court in 2007. *Evans*,

373 Ill. App. 3d at 949. In our opinion, this court found that, even if errors occurred at

defendant's trial, any errors were "harmless in light of the overwhelming evidence of

2

defendant's guilt." *Evans*, 373 Ill. App. 3d at 960. The following year, defendant filed his first postconviction petition, which was summarily dismissed as frivolous and patently without merit. This first-stage dismissal was affirmed two years later on appeal. *People v. Evans*, 401 Ill. App. 3d 1141 (2010) (table) (unpublished order under Illinois Supreme Court Rule 23). More than six years later, on December 16, 2016, defendant moved for leave to file a second or successive postconviction petition. The trial court denied his motion, and this court affirmed the trial court's denial in an opinion in 2021. *People v. Evans*, 2021 IL App (1st) 172809, ¶ 1.

¶ 5 Three years later, on April 5, 2024, defendant moved for leave to file a third postconviction petition, alleging that the State committed a *Brady* violation (*Brady v. Maryland*, 373 U.S. 83 (1963)), when the State did not provide the police's "street file" relating to his case. It is the denial of this motion that defendant now appeals. Defendant refers to this petition as his "second successive" petition. For ease of reference, we refer to it simply as his third petition.

¶ 6 Defendant's motion asserted that he received a letter from an attorney in December 2015 informing him that she had a police file relating to his case and that, while she could not release the file to him, she could release it to his attorney. Defendant attached the attorney's letter, dated December 3, 2015, which stated that she had "a Chicago police file related to your case." and that she could "share the information" with his attorney. The letter did not specify what the information was. Instead, the letter asked defendant to sign an authorization form that would allow her to speak "with any attorney that has represented you" so she could "obtain your file" and "compare it with what I have obtained." However, defendant's motion stated that he could not access the file because he lacked the funds to pay for an attorney. Thus, defendant filed this petition so he could be appointed an attorney who could then view the file.

¶ 7 Defendant's motion alleged that "a Brady violation occurred during his trial when the State withheld his street files." Defendant alleged:

"Even if the State didn't know that the Chicago Police withheld these documents. The street files were undoubtedly suppressed by the State, even if inadvertently. And although the contents of the street files are unknown at this point, it is premature to determine whether the evidence is favorable to the Defendant, he is entitled to move forward in the post-conviction process in second stage proceedings, so a court appointed counsel can review the concealed street files and make a determination of whether there is a Brady violation."

¶ 8 Defendant asserted that he contacted the private law firm that had represented him when he filed his initial postconviction petition but that this firm would not represent him again without further payment and defendant lacked the funds to pay them or any other attorney. Defendant did not indicate whether he contacted the public defender who represented him at trial.

¶ 9 On May 31, 2024, in a typed eight-page order, the trial court denied defendant's motion. It is this order that is the subject of the current appeal. In its order, the trial court provided the following factual summary, which neither party disputes on appeal:

"[Defendant's] claim is premised on the discovery of police files, or 'street files,' by attorney H. Candace Gorman. In an unrelated federal case, Gorman discovered a homicide investigative file pertaining to her client that contained exculpatory material that was never tendered to her client. *People v. Banks*, 2020 IL App (1st) 180322-U, ¶ 7. The file was located in a basement that contained 20 cabinets of homicide investigative files. *Id.* the federal court subsequently gave Gorman access to review the

files in the cabinets. *People v. Montanez*, 2023 IL 128740, ¶ 22. Gorman reviewed 466 files, including one pertaining to [defendant]. *Banks*[, 2020 IL App (1st) 180322-U,] ¶ 7."

¶ 10    The trial court observed that defendant had attached a 2015 letter from Gorman in which she stated that she had found a police file related to his case, and that she was under a court order which permitted her to share information only with the attorneys who had represented the individuals named in the files. See *People v. Montanez*, 2023 IL 128740, ¶ 22 (describing the federal order pertaining to Gorman). The trial court noted that defendant averred that he contacted the Bonjean Law Group, who had represented him in his initial postconviction petition, but that he was informed that he would be required to pay a retainer fee before they would speak with him. Defendant claimed that, since he could not afford counsel, he could not access the Gorman file.

¶ 11    However, the trial court observed: "Of note, there is no indication that [defendant] attempted to contact the Office of the Cook County Public Defender, who represented [defendant] at trial." Further, the trial court observed that defendant attached a letter from the Bonjean Law Group, dated February 20, 2020, in which the firm *had* agreed to discuss the matter with defendant by phone. The letter, authored by a paralegal, stated:

> "I wanted to let you know that Ms. Bonjean is in receipt of the messages you've left about your case documents. Ms. Bonjean just began a Federal Trial in Chicago; however, she asked that I write you a letter and inform you that she will be setting up a legal call with you as soon as the trial is over—which will most likely be in early March. Ms. Bonjean does have documents that were produced in your case—however they're currently under a Federal protective order from the Court which means that she

is unable to produce them to you directly. All of these details she'll be able to further explain to you during your upcoming legal call with her."

¶ 12    Based on cases that we will discuss in more detail in our "Analysis" section below, the trial court found that defendant failed to satisfy the cause-and-prejudice test applied to successive postconviction petitions. On June 25, 2024, defendant filed a timely notice of appeal, but it stated the wrong judgment date. On January 21, 2025, the Illinois Supreme Court issued a supervisory order directing this court to permit defendant to amend the notice of appeal to state the correct judgment date. This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    Defendant appeals the trial court's denial of his motion for leave to file his third postconviction petition, pursuant to the Post-Conviction Hearing Act (Act). 725 ILCS 5/122-1 *et seq.* (West 2024). Defendant requests leave to file a third petition to raise a claim that the State violated *Brady*, 373 U.S. 83, by failing to disclose evidence relevant to his defense, which was stored in the basement of the Chicago Police Department and allegedly not given to the defense. For the following reasons, we conclude that defendant cannot establish cause for filing a third petition.

¶ 15                        A. Review of a Successive Petition

¶ 16    A proceeding under the Act is a collateral attack on a conviction. *Montanez*, 2023 IL 128740, ¶ 71. The purpose of a proceeding under the Act is to resolve allegations of constitutional violations at trial that could not have been resolved on direct appeal. *Montanez*, 2023 IL 128740, ¶ 71. Our legislature designed the Act with the hope that defendants would be filing only one petition. *Montanez*, 2023 IL 128740, ¶ 73. As a result, the filing of successive petitions under the Act is disfavored and allowed under only limited circumstances. *Montanez*,

2023 IL 128740, ¶ 73. Our supreme court has repeatedly stressed that successive petitions "are not procedural vehicles for piecemeal discovery and litigation." *Montanez*, 2023 IL 128740, ¶ 108; *People v. Davis*, 2014 IL 115595, ¶ 55 (a defendant "is not permitted to develop the evidentiary basis for a claim in a piecemeal fashion in successive postconviction petitions").

¶ 17    Nonetheless, the legislature did provide a procedure for filing successive petitions, but this procedure requires a defendant to ask first for leave of court to file his petition. *Montanez*, 2023 IL 128740, ¶ 76. A defendant seeking leave to file a successive petition must demonstrate to the trial court that there was a cause for his failure to bring up the claim in his earlier petition and that prejudice results from that failure. *Montanez*, 2023 IL 128740, ¶ 76. This is commonly referred to in our jurisprudence as the "cause and prejudice test." *Montanez*, 2023 IL 128740, ¶ 76.

¶ 18    Except when a defendant asserts a claim of actual innocence, the Act permits a trial court to grant leave to file a successive petition only when a defendant has established both prongs of the cause-and-prejudice test. *Montanez*, 2023 IL 128740, ¶ 77. Specifically, a defendant shows cause when he can establish "some objective factor," external to the defense, that impeded his "efforts to raise the claim in an earlier proceeding." *Montanez*, 2023 IL 128740, ¶ 77; *Davis*, 2014 IL 115595, ¶ 55 (a defendant must explain why he was unable to "raise this or a similar claim in *any* of his earlier postconviction proceedings" (emphasis in original)). A defendant establishes prejudice when he can show that the claimed constitutional error "so infected the entire trial that the resulting conviction or sentence violates due process." *Montanez*, 2023 IL 128740, ¶ 77.

¶ 19    The cause-and-prejudice determination is a question of law, which is decided based upon defendant's pleadings and supporting documentation, rather than through an evidentiary

hearing. *Montanez*, 2023 IL 128740, ¶ 78. The process is best described as "a preliminary screening," by which the trial court determines whether defendant has alleged sufficient facts to "make a *prima facie* showing of cause and prejudice." *Montanez*, 2023 IL 128740, ¶ 78. The State is not allowed to participate. *Montanez*, 2023 IL 128740, ¶ 78. Since cause and prejudice is purely a question of law, our standard of review is *de novo*. *Montanez*, 2023 IL 128740, ¶ 80. This means that we owe no deference to the trial court, and we perform the same analysis that a trial court would. *Montanez*, 2023 IL 128740, ¶ 80.

¶ 20                                    B. A *Brady* Claim

¶ 21        In the case at bar, the constitutional violation alleged in the petition that defendant sought to file was a *Brady* violation. "In *Brady*, the United States Supreme Court held that 'the prosecution must disclose evidence that is favorable to the accused and "material either to guilt or to punishment." ' " *Montanez*, 2023 IL 128740, ¶ 82 (quoting *People v. Harris*, 206 Ill. 2d 293, 311 (2002), quoting *Brady*, 373 U.S. at 87). To succeed on a *Brady* claim, a defendant must show (1) that the undisclosed evidence is favorable to the defense, in that it is either exculpatory or impeaching, (2) that the evidence was suppressed by the State willfully or inadvertently, and (3) that the defendant was prejudiced because the evidence is material to either guilt or punishment. *Montanez*, 2023 IL 128740, ¶ 82. Evidence is considered material if there is a reasonable probability that the outcome of the proceeding would have been different. *Montanez*, 2023 IL 128740, ¶ 82. *Brady* applies even if the evidence was known only to the police and not to the prosecutor. *Montanez*, 2023 IL 128740, ¶ 82.

¶ 22                                    C. Claim at Issue

¶ 23        On appeal, defendant claims that there are two other First District cases, with similar Gorman claims, where the postconviction petitions advanced to the next stage. *People v.*

*Banks*, 2020 IL App (1st) 180322-U; *People v. Lyles*, 2022 IL App (1st) 201106-U; see *People v. Fallon*, No. 1-21-1235 (2022) (unpublished summary order under Illinois Supreme Court Rule 23(c)). However, none of these cases support defendant's claim of cause for filing a successive postconviction petition. "In *Banks* and *Fallon*, the appellate court considered the issue in the context of an *initial* postconviction petition, which does not involve application of the cause and prejudice test." (Emphasis in original.) *Montanez*, 2023 IL 128740, ¶ 118 (citing *Banks*, 2020 IL App (1st) 180322-U, ¶¶ 7, 13, and *Fallon*, No. 1-21-1235).

¶ 24        "In *Lyles*, the defendant demonstrated cause because his initial postconviction petition proceeding ended in 2011, prior to the discovery of [Chicago Police Department] files related to his case, so he could not raise the claims related to a similar letter he received from Gorman in 2015." *Montanez*, 2023 IL 128740, ¶ 119 (citing *Lyles*, 2022 IL App (1st) 201106-U, ¶¶ 5-7, 16). Here, by contrast, defendant received his 2015 letter from Gorman over a year before he moved on December 16, 2016, for leave to file his second postconviction petition, and nine years before the instant petition. Thus, the prior First District cases of *Lyles*, *Banks*, and *Fallon* do not offer support for defendant's motion for leave to file his third petition.

¶ 25        Defendant argues that, to establish cause, he need show only that he could not have made the claim in his *initial* postconviction proceeding. Hence, even if he had multiple postconviction relief petitions the cause would always refer back to the first. Defendant bases his argument on the fact that the Act provides that "[l]eave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her *initial* post-conviction proceedings and prejudice results from that failure." (Emphasis added.) 725 ILCS 5/122-1(f) (West 2024). The Act further defines "cause" as "an objective factor that impeded

his or her ability to raise a specific claim during his or her *initial* post-conviction proceedings."
(Emphasis added.) 725 ILCS 5/122-1(f) (West 2024).

¶ 26       First, we observe that the Act does not state that leave "shall" be granted but rather "may" be granted, thus, still leaving courts discretion in the granting of leave. Second, statutes must not be interpreted to create absurd results, and providing for endless cause cannot be what the legislators intended. This is particularly true in light of the fact that the legislators' limited filings to one petition without leave of court: hence, the reference to only the initial petition. Third, as we observed above, defendant's theory would create the type of piecemeal litigation that our supreme court has instructed us to avoid. Fourth, the State cited a slew of cases in its responsive brief that have stated that cause is measured from "*an* earlier proceeding," as opposed to *the* initial proceeding, and defendant did not file a reply brief objecting. (Emphasis added.) *E.g.*, *Montanez*, 2023 IL 128740, ¶ 77 (" 'Cause' refers to some objective factor external to the defense that impeded counsel's efforts to raise the claim in an earlier proceeding."); *Davis*, 2014 IL 115595, ¶ 14 (" 'Cause' refers to some objective factor external to the defense that impeded counsel's efforts to raise the claim in an earlier proceeding."); *People v. Ortiz*, 235 Ill. 2d 319, 329 (2009) ("cause" was defined as some objective factor external to the defense that impeded counsel's efforts to raise the claim in an earlier proceeding). Defendant had cited *People v. Smith*, 2014 IL 115946, ¶ 33, in support. However, *Smith* is inapposite because the petition at issue there was only a second petition and, thus, the only earlier proceeding was the initial one. *Smith*, 2014 IL 115946, ¶¶ 12-17. Here, defendant received the letter in 2015 but did not include it in his earlier 2016 second petition. Lastly, defendant argued that the issue of timeliness may only be considered by the trial court at the second stage and only after the State raises it as an affirmative defense. In support, defendant

cites *People v. Stoecker*, 384 Ill. App. 3d 289, 291 (2008), and *People v. Perkins*, 229 Ill. 2d 34, 43 (2007). That is correct, but solely for initial postconviction petitions, which do not need to satisfy the cause-and-prejudice test at issue here. While the defendant in *Stoecker* amended his postconviction petition four times, it was still just his initial petition. *Stoecker*, 384 Ill. App. 3d at 290. Similarly, *Perkins* also involved an initial petition. *Perkins*, 229 Ill. 2d at 38. For all these reasons, we do not find persuasive defendant's arguments regarding cause.

¶ 27       Where a defendant cannot establish one prong of the cause and prejudice test, a court need not consider the other prong. *Montanez*, 2023 IL 128740, ¶ 120 ("Because defendant cannot establish cause for filing a successive postconviction petition, we need not consider the prejudice prong of the cause and prejudice test."); *Smith*, 2014 IL 115946, ¶ 37 ("Having concluded that defendant cannot show prejudice, we need not address defendant's claim of cause."). Since defendant's motion and petition do not establish cause, we affirm the trial court's denial.

¶ 28                                   III. CONCLUSION

¶ 29       For the foregoing reasons, we find, after a *de novo* review, that defendant has not made a *prima facie* showing of cause that would permit the filing of his third postconviction petition. Thus, we affirm the trial court's denial of his motion seeking leave to file it.

¶ 30       Affirmed.

¶ 31       JUSTICE MIKVA, specially concurring:

¶ 32       I concur in the judgment because I agree with the majority that Mr. Evans failed to make the necessary *prima facie* showing of both cause and prejudice. However, I write separately because I believe that prejudice, rather than cause, is the better ground on which to resolve this appeal.

¶ 33     The Post-Conviction Hearing Act provides that a petitioner may only be granted leave of court to file a successive postconviction petition if he demonstrates both prejudice and "cause for his or her failure to bring the claim in his or her *initial* post-conviction proceedings." (Emphasis added.) 725 ILCS 5/122-1(f) (West 2024). The statute continues that "a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her *initial* post-conviction proceedings." (Emphasis added.) *Id.*

¶ 34     I am not convinced that Mr. Evans lacks cause to file his current postconviction petition simply because he obtained the letter from Ms. Gorman prior to first moving to file a successive postconviction petition in 2016. The seminal case on the issue, *People v. Pitsonbarger*, 205 Ill. 2d 444, 460 (2002), provides at one point, as the State notes, that cause "has been defined as some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in *an earlier proceeding*." (Emphasis added and internal quotation marks omitted.) However, in the same section, *Pitsonbarger* also states: "we reiterate that 'cause' in this context refers to any objective factor, external to the defense, which impeded the petitioner's ability to raise a specific claim in the *initial* postconviction proceeding." (Emphasis added.) *Id.* at 462. Thus, I do not agree that *Pitsonbarger* clearly directs us to look to whether a petitioner could have made the claim in *any* previous proposed postconviction petition—particularly since such a reading is at odds with the statutory language directing us to consider whether the petitioner could have included the claim in the "*initial*" petition. (Emphasis added.) 725 ILCS 5/122-1(f) (West 2024).

¶ 35     Further, because Mr. Evans's *pro se* 2016 motion for leave to file a successive petition was denied, that petition was never "filed." See *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010) (stating that "a successive postconviction petition is not considered 'filed' for purposes of

section 122-1(f), and further proceedings will not follow, until leave is granted"). Thus, there was no earlier successive postconviction petition that was ever filed, and no previous "proceeding" on a postconviction petition—as opposed to a motion for leave to file one—beyond Mr. Evans's initial postconviction petition.

¶ 36    Accordingly, rather than find that Mr. Evans has brought this claim too late because he should have brought it in 2016, I would find that he has brought it too early. When Mr. Evans received Ms. Gorman's letter in 2015, all he learned was that there was a street file in his case, with no idea whether it actually contained exculpatory information. Unless and until he learns of the file's contents, he cannot make a *prima facie* showing of prejudice, *i.e.*, that the suppression of any evidence so infected his trial that his conviction violated due process. See 725 ILCS 5/122-1(f) (West 2024).

¶ 37    I recognize that in *People v. Lyles*, 2022 IL App (1st) 201106-U, ¶ 17, we found that the petitioner demonstrated cause and prejudice in a similar street file case because "[i]t would be prejudicial to the defendant to assume the evidence is not favorable to him without giving him the opportunity to see it." However, the State in *Lyles* conceded that the petition established cause and prejudice, which it has not done here. *Id.* ¶ 16. I certainly agree with the *Lyles* court that fairness would seem to require the appointment of postconviction counsel where it is the sole means for a defendant to learn the contents of a street file that may contain evidence of a constitutional violation. *Id.* ¶ 18. But, the Act clearly establishes that it is a "defendant's burden to establish a *prima facie* showing of both cause and prejudice in order to be granted leave before further proceedings on his claims can follow." *People v. Pittman*, 2025 IL App (1st) 241175, ¶ 23 (citing *People v. Bailey*, 2017 IL 121450, ¶ 24). While I am not

assuming that the evidence in Mr. Evans's street file is unhelpful or unfavorable to him, I likewise do not believe that we may simply assume that it *is* favorable to him.

¶ 38　　　　I also write separately to point out that, regardless of whether Mr. Evans's motion to file a successive petition is denied on the basis of cause or prejudice, he should not be precluded from filing a petition when and if he obtains his street file, if the contents are significantly favorable to his defense. As we recognized in *People v. Lee*, 2024 IL App (1st) 221268, ¶ 35:

> "[A] defendant may *** be granted leave to file a successive petition raising a claim he did raise in an earlier petition, if he has since obtained new evidence to support that claim and can demonstrate cause for the failure to discover and present that new evidence in the earlier proceeding." (Internal quotation marks omitted.)

This statement referred to new supporting evidence for a claim that had already been made in an earlier successive postconviction petition. *Id.* Thus, if Mr. Evans obtains new evidence that the street file contains exculpatory material, no part of our ruling today should prevent him from establishing cause and prejudice to file a future petition.

¶ 39　　　　Finally, I write separately to express disagreement with the statement in the majority opinion that the Act allows circuit courts discretion in granting leave to file a successive petition, even where the defendant meets the cause-and-prejudice test. See *supra* ¶ 26. Section 122-1(f) does state that leave to file a successive petition "may" be granted if a petitioner demonstrates cause and prejudice, and not that it "shall" be granted in such a case. 725 ILCS 5/122-1(f) (West 2024). However, section 122-1(f) is a codification of the cause-and-prejudice test articulated in *Pitsonbarger*. *People v. Edwards*, 2012 IL 111711, ¶ 22. In *Pitsonbarger*, the court clarified whether the cause-and-prejudice test was "merely an aid that courts may use to determine whether a claim raised in a successive petition should be allowed to proceed," or

14

"the analytical tool that ha[d] been adopted by th[e] court for use in all such cases." *Pitsonbarger*, 205 Ill. 2d at 457-58. The court held that the latter was correct, "that the cause-and-prejudice test is the analytical tool that is to be used to determine whether fundamental fairness *requires* that an exception be made to section 122-3 [of the Act (725 ILCS 5/122-3 (West 1996))] so that a claim raised in a successive petition may be considered on its merits." (Emphasis added.) *Id.* at 459.

¶ 40    Further, "the denial of a motion for leave to file a successive petition alleging cause and prejudice is reviewed *de novo*" (*People v. Robinson*, 2020 IL 123849, ¶ 39), not for an abuse of discretion (*People v. Jackson*, 2018 IL App (1st) 171773, ¶ 67). A *de novo* standard of review would not be appropriate if the circuit court has discretion to deny leave to file even where a defendant has made a *prima facie* showing of cause and prejudice.

¶ 41    With these clarifications, and based on this reasoning, I join in the judgment of the court.

***People v. Evans*, 2026 IL App (1st) 241357**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 02-CR-12027; the Hon. Kenneth J. Wadas, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Christopher G. Evers, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Jessica R. Ball, and James J. Stumpf, Assistant State's Attorneys, of counsel), for the People. |