NOTICE

Decision filed 01/12/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 180383-U

NO. 5-18-0383

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 92-CF-543 |
| | ) | |
| KENNETH BOWNES, | ) | Honorable |
| | ) | Stephen P. McGlynn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Welch and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where the defendant failed to satisfy the prejudice element of the cause-and-prejudice test, the circuit court did not err in denying him leave to file a successive postconviction petition, and where no argument to the contrary would have merit, appointed appellate counsel is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 2    The defendant, Kenneth Bownes, was found guilty of two counts of first degree murder, for which he is serving natural life imprisonment. He appeals from the circuit court's denial of his motion for leave to file his third petiton for postconviction relief. The defendant's court-appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit and, on that basis, has filed a motion for leave to withdraw as counsel (see *Pennsylvania v. Finley*, 481 U.S. 551 (1987)), along with a memorandum of law in support of the motion. The defendant has filed an objection to the *Finley* motion. This court has examined

1

OSAD's *Finley* motion and memorandum, the defendant's objection, as well as the entire record on appeal and this court's orders in the previous appeals in this case, and has determined that this appeal does indeed lack merit. Accordingly, OSAD's *Finley* motion must be granted, and the judgment of the circuit court must be affirmed.

¶ 3                                    BACKGROUND

¶ 4               *Trial, First Postconviction Proceeding, and Direct Appeal*

¶ 5     In January 1994, the defendant was brought to trial by jury on two counts of first degree murder in the shooting deaths of Troy Haynes and Derrick Butler. Just prior to *voir dire*, the circuit court granted a motion *in limine* that the State had filed. The court clarified that the *in limine* order prohibited the defendant from questioning Lee Molton, and other accomplices in the Haynes-Butler murders, about the specific lengths of the sentences that they faced, or that they had negotiated or hoped to receive. The purpose of this *in limine* order, the court said, was to prevent the jury from hearing information that could possibly alert them to the possible sentences that the defendant faced if found guilty.

¶ 6     At the defendant's trial, Darren Phelps and Ronald Tolliver testified that on February 25, 1992, they were socializing at David Hopkins's house on Gaty Avenue in East St. Louis, Illinois, along with a few others including Troy Haynes and Derrick Butler. Hopkins's house consisted of a main floor and the basement, with a spiral staircase connecting the two levels. Sometime after 10 p.m., two men—the defendant and a man wearing a mask—invaded the house. Phelps testified that he saw the masked man shoot Derrick Butler, twice. Phelps and Tolliver both testified that they saw the defendant, who was not wearing a mask, shoot at Tolliver, but miss. By the time the defendant and the masked man departed from the house, which was no more than several minutes after they had forced their way in, Haynes and Butler appeared to be dead. Haynes's body was

2

lying not far from the front door to the house, and Butler's body was lying a couple of feet from the stairway leading to the basement.

¶ 7    Two women, Nicole Henry and Bernadette Steinback, testified that they heard the defendant, Mario Johnson, and Lee Molton discuss plans to commit a robbery at David Hopkins's house on Gaty Avenue. Henry and Steinback further testified that on February 25, 1992, they were in a car with the defendant, Johnson, and Molton as Molton drove them all to Hopkins's house. Molton parked near the house. Steinback testified that as the three men got out of the car, Molton handed the defendant a 9-millimeter handgun. Henry and Steinback saw that Molton and Johnson were wearing masks, but the defendant was not wearing a mask. The two women remained in the car as the three men—the defendant, Johson, and Molton—walked toward the house. A short time later, Henry and Steinback heard gunshots inside the house. Minutes later, they observed the defendant, Johnson, and Molton return to the car.

¶ 8    Lee Molton testified that he drove the defendant and Mario Johnson to David Hopkins's house on Gaty Avenue, where they had planned to commit a robbery. Nicole Henry and Bernadette Steinback were in the car with them. Molton was armed with a 9-millimeter handgun, and Johnson was armed with "a Tech 9 or something." Henry and Steinback remained in the car as Molton, the defendant, and Johnson got out. Upon exiting the car, Molton handed his 9-millimeter handgun to the defendant. As Molton described the events, he largely stayed on the front porch as the defendant and Johnson forcibly entered the house. During the time that the defendant and Johnson were inside the house, Molton heard gunshots.

¶ 9    Molton had been arrested for the killings on Gaty Avenue. Molton testified at the defendant's trial pursuant to an agreement with the State, under which he would cooperate with law enforcement in their investigation of the Gaty Avenue killings, and would testify fully and

3

truthfully against any codefendants in those killings, but there was no agreement as to the disposition of the murder charges against Molton. It was Molton's hope and expectation that his cooperation would be looked upon favorably at his own sentencing, Molton testifed.

¶ 10    At trial's end, the jury returned a verdict finding the defendant guilty on both counts of first degree murder. Subsequently, the circuit court sentenced him to natural life imprisonment. No notice of appeal was filed.

¶ 11    In January 1997, the defendant filed his first *pro se* petition for postconviction relief. It presented three claims. In one claim, the defendant alleged that he had been deprived of a direct appeal when trial counsel failed to file a notice of appeal, even though the defendant had asked him to file one and counsel had said that he would. The two other claims related to the motion *in limine* discussed above. The defendant asserted that the *in limine* order precluded the jury from hearing information necessary to assess the credibility of the State's witnesses. (The *pro se* petition did not specify any State's witnesses who was unfairly shielded by the *in limine* order, and it did not specify any credibility-related information that the *in limine* order had precluded the jury from hearing.) The circuit court ordered the petition docketed for further consideration and appointed postconviction counsel for the defendant.

¶ 12    In December 1997, appointed postconviction counsel, on behalf of the defendant, filed an amended petiton for postconviction relief. The amended postconviction petition repeated the claim that the defendant had been wrongly deprived of a direct appeal, due to trial counsel's inaction. The amended petition also alleged, *inter alia*, that the trial court "committed judicial misconduct by knowingly and intentionally allowing State's witness Lee Moulton [*sic*] [to] take the witness stand and commit perjury and further allowed the perjured testimony [to] go uncorrected by either the State or defense." (No information on the nature of Molton's alleged perjury was provided in

4

the amended petition.) Curiously, the amended petition did not include a prayer for relief. Instead, the amended petition's initial paragraph requested that the judgment be vacated or the sentence reduced.

¶ 13    In May 1998, the court held an evidentiary hearing on the amended postconviction petition. The defendant testified, *inter alia*, that after he was sentenced, he asked trial counsel to file an appeal, and trial counsel said that he would do so. The State called trial counsel to testify. On cross-examination, trial counsel testified that he was the attorney of record throughout the trial and sentencing, that he never had withdrawn as the attorney of record, and that he had told the defendant's family that he would not file a notice of appeal without additional payment. The circuit court took the matter under advisement, giving the parties time to file their closing arguments. For his closing argument, appointed postconviction counsel filed a "memorandum in support of amended petition for post-conviction relief," which included a prayer for relief asking that the defendant be granted leave to file a late notice of appeal.

¶ 14    In June 1998, the circuit court, in a short handwritten order, granted the amended postconviction petition, and granted the defendant 30 days in which to file a late notice of appeal from the judgment of conviction. (The court thus gave the defendant the relief requested in the memorandum that served as his closing argument.) The defendant filed the late notice of appeal. OSAD was appointed to represent him on direct appeal.

¶ 15    In the direct appeal, the defendant argued only that he was deprived of a fair trial when the trial court failed to clarify the jury's inquiry concerning interpretations of law and that, by failing to pursue a clarification, defendant's trial counsel rendered ineffective assistance of counsel. In a summary order, this court rejected the defendant's argument, and affirmed the judgment of

5

conviction. *People v. Bownes*, No. 5-98-0423 (1999) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 16                                    *Second Postconviction Proceeding, and Appeal*

¶ 17    In August 2000, the defendant filed a *pro se* motion for leave to file a second petition for postconviction relief. The motion for leave stated that the circuit court, during the proceeding on the defendant's first petition for postconviction relief, had reached the merits of only one claim—the claim that the defendant had been deprived of a direct appeal when trial counsel failed to file a notice of appeal—but had not reached the merits of the first petition's other two claims, resulting in a fundamental miscarriage of justice. The motion for leave was accompanied by the proposed second petition for postconviction relief. The proposed petition claimed that (1) the State's pretrial motion *in limine* (discussed herein, *supra*) prohibited the defendant from questioning the State's accomplice witnesses about the specific lengths of sentences that they faced, and thus served to withhold from the jury information favorable to the defendant; (2) the trial prosecutor did not correct Lee Molton's "perjured testimony" that he was not selling drugs during the two years that he was out on bond in this case; (3) the State had "an undisclosed plea agreement" with Molton, under which he was able to continue to sell drugs while out on bond for the Haynes-Butler murders, but the State did not disclose the agreement; and (4) the State "deprived [the defendant] of impeachment evidence (prior feony conviction)" by failing to make sure that Molton was sentenced for his part in the Haynes-Butler murders before he testified at the defendant's January 1994 trial. The defendant requested the appointment of an attorney and an evidentiary hearing.

¶ 18    In February 2001, appointed postconviction counsel, on behalf of the defendant, filed an amended second petition for postconviction relief. In the amended second petition, the defendant claimed that (1) the circuit court, during the proceeding on the defendant's first postconviction

6

petition, had ruled solely on the claim that the defendant had been deprived of a direct appeal, but had not addressed the merits of the other claims contained in his amended first postconviction petiton, which constituted a fundamental miscarriage of justice and a denial of due process; and (2) the defendant's sentence violated the rule in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The State filed a motion to dismiss. In August 2001, the circuit court denied the *Apprendi* claim.

¶ 19    In September 2002, the circuit court dismissed the second postconviction petition. One reason given for the dismissal was that the petition was late without excuse. The defendant appealed.

¶ 20    On appeal, OSAD represented the defendant. One of OSAD's arguments came straight from the defendant's *pro se* motion for leave to file a successive postconviction petition, and from postconviction counsel's amended second postconviction petition. It argued that the circuit court, when it granted the defendant leave to file a late notice of appeal from the judgment of conviction, failed to rule on any of the other issues in the defendant's first postconviction petition, leaving those other issues pending in the circuit court and subject to amendment. This court disagreed, noting that the circuit court, by granting leave to file a late notice of appeal, gave the defendant the relief that he had requested, and therefore "[n]o matters were left pending in the circuit court." *People v. Bownes*, No. 5-02-0669, order at 2 (2004) (unpublished order under Illinois Supreme Court Rule 23). The dismissal of the second postconviction petition was affirmed. *Id.* at 16.

¶ 21    *Defendant's Motion for Leave to File a Third Postconviction Petition: The Subject of the Instant Appeal*

¶ 22    On August 17, 2017, the defendant filed a *pro se* motion for leave to file a third postconviction petition, which is the subject of the instant appeal. The proposed third petition itself alleged that the defendant was deprived of due procees where the State (1) improperly withheld evidence that it had formed an "undisclosed" plea agreement with State's witness Lee

7

Molton, pursuant to which Molton would be sentenced to imprisonment for a mere 20 years for his role in the Haynes-Butler murders, in exchange for his trial testimony against the defendant and Mario Johnson; and (2) failed to correct Molton's false testimony, at the defendant's trial, that he had not formed a plea agreement with the State.

¶ 23    In the motion for leave to file the third petition, the defendant attempted to show cause and prejudice for the late filing. The defendant's cause for not raising the claim in the initial postconviction proceeding was the State's "intentional and willful *** withholding and suppression" of evidence of its plea agreement with Molton. "Petitioner cannot be held responsible when the State intentionally and willfully refuses to comply with discovery requests, Illinois Supreme Court Rule and United States Supreme Court case law," the defendant wrote. Prejudice, the defendant asserted, flowed from the fact that Molton was the only witness who testified that the defendant shot the decedents Haynes and Butler, while the other two occurrence witnesses, Darren Phelps and Ronald Tolliver, were "unreliable" and "unworthy of belief," as shown by the content of their trial testimonies.

¶ 24    Accompanying the motion for leave, and the proposed petition, were various documents, among them: (1) a copy of Lee Molton's sentencing transcript from January 12, 1995, (2) Molton's (untimely) motion to reduce sentence, and (3) a letter dated September 23, 1995, from Molton to the chief judge of St. Clair County. (This court presumes the authenticity and veracity of all the documentation filed by the defendant.) At Molton's sentencing hearing, which occurred almost exactly one year after his testimony at the defendant's trial, Molton's attorney argued that the court should reward Molton for his cooperation in the case by imposing the minimum sentence for first degree murder, which was imprisonment for 20 years. The State stood mute as to a sentencing recommendation, as previously agreed. The court sentenced Molton to 25 years of imprisonment.

8

In Molton's letter dated September 23, 1995, Molton wrote to the chief judge that "the State told me th[e]y would help me if I told on the other mens [*sic*] and my attorney told me I would get 20 years but I got 25 years."

¶ 25    On March 7, 2018, the circuit court entered the following order: "Due to death of assigned judge, no ruling within 90 days of filing of petition.  Court appoints P.K. Johnson V to represent [the defendant] in a stage 2 proceeding."

¶ 26    On July 17, 2018, a prosecutor, the defendant, and the defendant's appointed postconviction counsel appeared before the circuit court.  Both the State and postconviction counsel began by clarifying that the matter before the court was the defendant's *pro se* motion for leave to file a successive postconviction petition, not the successive petition itself, and that the successive petition could not even be considered filed until the court had granted leave to file it.  Once the procedural posture of the case was clarified, postconviction counsel drew the court's attention to the defendant's *pro se* motion for leave to file a successive petition.  Counsel argued that the claims presented in the proposed petition were "new and different," and could not have been raised earlier.  The State simply deferred to the court on whether to grant the defendant leave.  The court said that it would review all of the defendant's previous petitions and all of the appellate court's previous decisions in the case, and then examine his newest petition "to see if it states something new, upon which relief can be granted."  Counsel indicated that no amendments to the motion for leave were necessary.  The court took the matter under advisement.

¶ 27    On July 26, 2018, the circuit court entered a short written order denying the defendant leave to file his third postconviction petition.  On August 3, 2018, the defendant perfected the instant appeal.

9

¶ 28                                    ANALYSIS

¶ 29    The defendant appeals from the circuit court's order denying him leave to file his third postconviction petition. Appellate review is *de novo*. *People v. Wrice*, 2012 IL 111860, ¶ 50.

¶ 30    As previously noted, the defendant's appointed attorney in this appeal, OSAD, has filed a *Finley* motion for leave to withdraw as counsel, along with a memorandum of law in support of that motion. In its memorandum, OSAD suggests two potential issues on appeal, namely: (1) whether the defendant's motion for leave to file a successive postconviction petition sufficiently alleged cause and prejudice, or a colorable claim of actual innocence; and (2) whether the defendant's successive postconviction petition stated an arguable claim of a constitutional violation.

¶ 31    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a means whereby a criminal defendant may assert that his conviction resulted from a substantial deprivation of his federal or state constitutional rights. *Id.* § 122-1(a). The Act contemplates the filing of only one postconviction petition. *Id.* § 122-1(f); *People v. Jones*, 191 Ill. 2d 194, 198 (2000). Where a criminal defendant files an initial postconviction petition, and the circuit court rules on that petition, the ruling has *res judicata* effect with respect to all claims that were raised, and all claims that could have been raised, in the initial petition. *Jones*, 191 Ill. 2d at 198. "As a consequence, a defendant faces a daunting procedural hurdle when bringing a successive post-conviction petition." *Id.*

¶ 32    A defendant must obtain leave of court to file a successive petition, and in order to obtain leave of court, he must satisfy the cause-and-prejudice test. 725 ILCS 5/122-1(f) (West 2016); *Jones*, 191 Ill. 2d at 199. That is, he must show cause by "identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction

10

proeedings," and he must show prejudice by "demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2016). Both elements of the cause-and-prejudice test must be satisfied in order for the defendant to prevail; satisfying just one element is insufficient. *People v. Pitsonbarger*, 205 Ill. 2d 444, 464 (2002). Unless the defendant satisfies the cause-and-prejudice test, the claims in a successive petition are barred, and those claims will not be considered on their merits. *Jones*, 191 Ill. 2d at 199. "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *People v. Smith*, 2014 IL 115946, ¶ 35.

¶ 33     Regardless of what else may be said about this case, it is clear that the defendant has not shown prejudice.   That is, he has failed to show that the claims not raised in his initial postconvicton proceeding, but raised in his proposed third petiton, so infected his trial that the resulting convictions violated due process.

¶ 34     In his proposed third petition, the defendant has claimed that the State (1) improperly withheld evidence that it had formed an "undisclosed" plea agreement with State's witness Lee Molton, pursuant to which Molton would be sentenced to imprisonment for a mere 20 years for his role in the Haynes-Butler murders, in exchange for his trial testimony against the defendant and Mario Johnson; and (2) failed to correct Molton's false testimony, at the defendant's trial, that he had not formed a plea agreement with the State. (There was no claim of actual innocence.) As evidence of this alleged plea agreement for a 20-year sentence, the defendant presented a copy of a letter written by Molton to the chief judge of St. Clair County. In that letter, dated September

11

23, 1995, Molton wrote to the chief judge that "the State told me th[e]y would help me if I told on the other mens [*sic*] and my attorney told me I would get 20 years but I got 25 years."

¶ 35    This letter does not even suggest the formation of an actual plea agreement between Molton and the State, whether for 20 years or for any other term. It merely reflects the agreement that Molton described at the defendant's trial—that Molton's cooperation with the authorities, in their investigation of the Haynes-Butler murders, would result in some form of favorable treatment for Molton down the line. Nowhere in the letter, or in the other documents submitted by the defendant, such as Molton's sentencing transcript, does Molton claim that he and the State had formed a plea agreement for a specific sentence. To the contrary, Molton's beef appears to be with his own attorney, whose representation and advice Molton found ineffective. Molton's attorney appears to have predicted a 20-year sentence, and Molton was apparently upset that the court's actual sentence was 5 years longer than that.

¶ 36    Furthermore, even if there were documentation supporting the existence of a 20-year plea agreement between Molton and the State, the defendant could not have disclosed, before the jury, the specific length of the sentence. An order *in limine*, discussed *supra*, prohibited the defendant from questioning Molton, or other accomplices, about the specific lengths of the sentences that they faced, or that they had negotiated or hoped to receive, and this court has already held that this limition on the cross-examination of witnesses did not amount to an abuse of discretion. *Bownes*, No. 5-02-0669, order at 6.

¶ 37    Finally the defendant, in his written objection to OSAD's *Finley* motion, states that the circuit court's appointment of postconviction counsel (on March 7, 2018) "constituted the granting of leave" to file his third postconvicton petition. The circuit court's appointment order appears to have resulted from judicial confusion about the procedural posture of the case. At a hearing on

12

July 17, 2018, both appointed counsel and the State clarified the procedural posture of the case, for the benefit of the court, and the court henceforth handled this case appropriately. Only the circuit court's granting of leave to file a successive petition can constitute the granting of leave to file a successive petition. Here, the court never entered an order granting leave, so the defendant was not entitled to file his third petition. The court denied leave, and that was the appropriate end to this case.

¶ 38                                CONCLUSION

¶ 39     The defendant failed to establish the prejudice element of the cause-and-prejudice test, and therefore the court was right to deny his motion for leave to file his third postconviction petition. No argument to the contrary would have merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 40     Motion granted; judgment affirmed.