2024 IL App (1st) 221268

FOURTH DIVISION
Order filed: July 11, 2024

No. 1-22-1268

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 92 CR 28979 |
| | ) | |
| Albert Lee, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Martin concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Albert Lee, appeals a circuit court order denying him leave to file a successive petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). The defendant contends that the circuit court erred in concluding that he had not shown cause and prejudice for his failure to raise his claim of a coerced confession in his initial postconviction petition. We agree with the defendant and reverse.

¶ 2     The defendant has been before this court many times before, and the facts of his case are adequately set out in the orders and opinions disposing of his prior appeals. Accordingly, we will recite only those facts necessary to determine the issues presently before us.

¶ 3     In 1992, the defendant was indicted on, among others, charges of first-degree murder and armed robbery after the owner of a jewelry store in the building in which the defendant worked as a security guard was robbed and killed. The defendant confessed to the robbery and murder in a court-reported statement to police. A codefendant was also charged and ultimately convicted. He is not involved in this appeal.

¶ 4     Prior to trial, the defendant moved to suppress his statement to police, asserting that the statement had been coerced and was involuntary. Specifically, the defendant testified at a hearing on the motion that Detective James Cassidy handcuffed him to a ring on the wall, struck him in the solar plexus, struck him repeatedly in the abdomen and chest, denied him food, drink, and use of the bathroom, refused to let him call his mother so that she could get him an attorney, threatened that he would do "whatever it took" to get him to confess, and promised him that, if he gave a confession, "they are going to go easy on [him]," "everything would be okay," and he would only get twenty years in protective custody. According to the defendant, when he eventually agreed to confess, Cassidy stood behind the court reporter and pantomimed answers when the defendant was unsure of how to respond. Cassidy denied the defendant's allegations, and the court found Cassidy credible and denied the defendant's motion.

¶ 5     Following a bench trial, the defendant was convicted of first-degree murder and armed robbery and sentenced to terms of life and fifty years' imprisonment, respectively. On appeal, this

court vacated the defendant's convictions, finding his jury trial waiver to have been involuntary. See *People v. Lee*, 285 Ill. App. 3d 1092 (1996) (*Lee I*).

¶ 6 On remand, prior to retrial, the defendant moved to relitigate his motion to suppress his statement to police. The defendant alleged that his counsel had recently become aware of coercion allegations against Cassidy in two other cases. Attached to the motion was a 1998 *Chicago Tribune* article describing allegations that Cassidy had coerced confessions from a seven-year-old and an eight-year-old in the murder of Ryan Harris and had similarly coerced a confession from an eleven-year-old, A.M., in the murder of Anna Gilvis. The article stated that the charges against the boys in the Harris case had been dismissed "following a crime lab report that crippled the police case" and that, although he had been convicted based on his confession to Cassidy, A.M. had recently filed a civil complaint against Cassidy and others in federal court alleging that his confession had been coerced, that police lacked probable cause to arrest him, and that he had not been properly given *Miranda* warnings. According to the article, A.M. testified at his trial that, in the article's words, "Cassidy and his partner cursed, shouted[,] and thumped his knees, calling him a liar and telling him that if he confessed, they—and God—would forgive him." The article further noted that, in affirming the boy's conviction, a dissenting appellate court judge had, again in the article's words, "express[ed] serious concern the boy's rights were violated."

¶ 7 At the hearing on the defendant's motion, defense counsel informed the court that he had subpoenaed OPS records for Cassidy but was informed that there were no additional allegations beyond those detailed in the *Tribune* article. The State argued that the allegations contained in the article were insufficient to warrant relitigation of the motion to suppress, with the allegations being

unreliable, too remote in time, and unable to be corroborated at a hearing. The court denied the motion to relitigate "[b]ased on the facts that have been presented."

¶ 8　　The defendant was then retried before a jury and again convicted of first-degree murder and armed robbery. Again, he was sentenced to concurrent terms of life and fifty-years' imprisonment. This court affirmed the convictions but reversed the sentences and remanded for a new sentencing proceeding, finding that the sentences violated the requirements of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). See *People v. Lee*, 318 Ill. App. 3d 417 (2000) (*Lee II*).

¶ 9　　On remand, the circuit court sentenced the defendant to consecutive terms of sixty years for murder and thirty years for armed robbery. This court affirmed. See *People v. Lee*, No. 1-05-1359 (2007) (unpublished order under Supreme Court Rule 23) (*Lee III*).

¶ 10　　While these trial and appellate proceedings were pending, the defendant filed two postconviction petitions in 1999 alleging, among others claims, that the trial court erred in limiting cross-examination of Cassidy regarding the defendant's claim of brutality. He withdrew both petitions before the court issued a ruling. In 2001, the defendant filed another postconviction petition, this time alleging ineffective assistance of appellate counsel for, among other claims, failing to contest the limitation on cross-examination of Cassidy. The defendant apparently stopped prosecuting the petition after being granted leave to amend, and the court again never issued a ruling on the petition.

¶ 11　　In January 2007, the defendant filed what the parties agree to be his "initial" postconviction petition, in which he claimed that trial and appellate counsel rendered ineffective assistance by failing to assert his right to speedy trial. The circuit court summarily dismissed the petition, and

we affirmed that dismissal. See *People v. Lee*, No. 1-07-0974 (2009) (unpublished order under Supreme Court Rule 23) (*Lee IV*).

¶ 12     In 2008, the defendant filed a motion for leave to file a successive postconviction petition alleging that his sentences were improperly ordered to run consecutively. The circuit court denied the defendant leave to file, and on appeal we affirmed. See *People v. Lee*, No. 1-08-2330 (2010) (Summary Order) (*Lee V*).

¶ 13     In 2010 and 2011, the defendant filed two unsuccessful petitions for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). We affirmed on appeal. See *People v. Lee*, 2013 IL App (1st) 110065-U (*Lee VI*).

¶ 14     In 2013, the defendant filed a motion for leave to file a successive postconviction petition asserting, among other claims not relevant here, that he had newly discovered evidence of Cassidy's pattern and practice of coercing confessions. In the motion for leave and in the proposed petition the defendant alleged that he had befriended a fellow inmate named Charles Johnson. In September 2013, Johnson told the defendant that Cassidy had also been involved in his case. Johnson let the defendant read the briefs from his appeal, but would not let the defendant copy them, and the briefs were not attached to the motion or the proposed petition. According to the defendant, "[i]t was at this time that I gained information about *** [Cassidy's] pattern of obtaining coerced false confessions." In the proposed petition's argument regarding Cassidy's history of coercing confessions, the defendant cited *Chicago Tribune* articles from December 18, 2001, and September 20, 2005, two law review articles from 2004, and a Seventh Circuit case from 2004 (*A.M. v. Butler*, 360 F.3d 787 (2004)). The defendant also cited, by the trial court numbers, the "Dixmoor Five" case (*People v. Harden*, No. 95 CR 23475) and the "Englewood

Four" case (*People v. Swift*, No. 95 CR 09678). The defendant did not include in his argument any discussion of the circumstances of Johnson's case, but he did discuss the case of a man named Robert Hudson, whose conviction, according to the 2005 *Tribune* article, had been thrown out after it was revealed that Hudson's confession had been coerced by Cassidy and another officer and that Cassidy had punched and kicked Hudson during the interrogation. Attached to the proposed petition were affidavits from the defendant and Johnson and a photocopy of part of the 2001 *Tribune* article.

¶ 15    The circuit court denied the defendant's motion for leave to file. Applying the factors discussed in *People v. Patterson*, 192 Ill. 2d 93, 145 (2000), the court found that, because he had not raised the issue in his direct appeal or in his previous postconviction petitions, the defendant had not consistently claimed that his confession had been coerced. The court also found that the defendant had not alleged sufficient details of his own interrogation or of the other coerced confessions to establish that Cassidy's conduct in his case was sufficiently similar to Cassidy's conduct in the other cases.

¶ 16    On appeal, this court affirmed the circuit court's order. See *People v. Lee*, 2019 IL App (1st) 163308-U, ¶ 21 (unpublished order under Supreme Court Rule 23) (*Lee VII*). We held that the defendant had not established cause for failing to raise the claim in his initial petition. *Id.* ¶ 20. In explaining our ruling, we reasoned that, "[c]learly, the defendant would have been aware of his allegation that his own confession was coerced, because he made those claims before trial," and that, having such knowledge, the defendant needed to explain his failure to raise the claim in his initial petition. *Id.* The defendant contended that the new evidence made his claim "more credible,"

but we found that explanation to be insufficient. *Id.* Because we held that the defendant had not established cause, we did not address the issue of prejudice. *Id.* ¶ 21.

¶ 17    In 2020, the defendant filed another motion for leave to file a successive postconviction petition, which is the subject of the present appeal. In the proposed petition and a supporting memorandum of law, both of which had been written by the attorney who represented the defendant in his most recent appeal, the defendant re-alleged his claim that his confession had been coerced, this time citing different newly discovered evidence of Cassidy's pattern and practice of coercing confessions. In support of his contention that he had sufficient cause for his failure to raise this claim in his initial petition, the defendant asserted that this evidence was not reasonably available to him at the time of his initial petition and that the information that he did have at that time would have been insufficient to substantiate his claim. Further, in an affidavit attached to the proposed petition, the defendant averred that he did not have access to the internet or computerized legal research until 2016 and that he did not have access to newspaper articles because he lacked subscription funds.

¶ 18    As for the evidence supporting his claim, attached to the proposed petition were five civil complaints against Cassidy, two federal district court orders, two settlement summaries, the briefs from Charles Johnson's appeal, and the 2001 *Chicago Tribune* article previously included with the defendant's 2013 petition. The defendant alleged that these documents established Cassidy's pattern and practice of coercing confessions in a similar manner to the alleged coercion of his own, including Cassidy's history of beating suspects until they confess, fabricating and coaching confessions, and making false promises and improper threats. Specifically, regarding the physical beating of suspects, the defendant's exhibits demonstrated that Cassidy had punched and kicked

Steven Hudson in the abdomen, physically hit Larod Styles, and yanked Gary Fincher's neck chain, pulled his hair, and grabbed his chest. As it relates to fabricating and coaching confessions, the exhibits show that Hudson, Terrell Swift, Harold Richardson, Jerry Fincher, and A.M. all claimed that Cassidy had fabricated their confessions. As for Cassidy's false promises and threats, the evidence contained allegations that Cassidy threated to charge Hudson's girlfriend with murder and take away Hudson's child if Hudson did not confess, that Cassidy promised Fincher freedom in exchange for a confession, that Cassidy and other officers threatened to disclose that Fincher had "snitched," that Cassidy threatened to kill Richardson, that Cassidy threatened violence against Vincent Thames, that Cassidy promised leniency to Johnson and threatened to make him the triggerman if he did not confess, and that Cassidy promised A.M. that if he confessed he could attend his brother's birthday party.

¶ 19    The defendant further argued in the proposed petition that circumstantial evidence contradicted or undermined his confession and supported his claim that the confession was coerced. Additionally, the defendant argued that, while his claim of physical coercion does not require him to prove prejudice, he could demonstrate prejudice from the non-physical coercion tactics that Cassidy allegedly employed, alleging that the State admitted that the confession was the lynchpin of its case.

¶ 20    The circuit court denied the defendant's motion for leave to file, finding that he had failed to demonstrate either cause or prejudice. The court found that the defendant's assertion that he could not have investigated Cassidy and learned of the other allegations against him earlier was rebutted by the record, specifically a statement that the defendant made in 2003 that he wished to be held at Menard Correctional Center, rather than the Cook County Jail, during postconviction

proceedings because it "has computer access to material [he] needs in order to fully extrapolate the issues within [his] postconviction petition." The court also noted that the defendant had previously filed a *Chicago Sun-Times* article in support of his initial petition, rebutting his assertion that he could not access Chicago news articles. The court further found that the defendant's citation to and discussion of the 1998 *Tribune* article discussing the Harris and Gilvis murders rebutted his assertion that he was unaware or unable to become aware about the results of the litigation that followed those cases. Additionally, the court found that the arguments raised in the present petition are essentially the same as those raised in the previous 2013 petition and that he is, therefore, collaterally estopped from raising them again.

¶ 21    Aside from those procedural bars, the court also found that the defendant's assertion of cause failed on the merits. First, the court found, as did this court in affirming the prior denial of leave to file, that the defendant should have had knowledge of his claim at the time of his initial petition. Second, the court found that the defendant's failure to raise this claim earlier was not excused by the defendant's belief that he lacked sufficient evidentiary support for the claim and that the claim would have failed. According to the court, the defendant was required to raise the claim at his first opportunity, regardless of its chance of success. Third, the court found that, essentially, the evidence that the defendant cites in support of the present petition does not qualify as newly discovered because it was available prior to the filing of his 2013 petition, and he had the ability to discover it as early as 2007.

¶ 22    Regarding prejudice, the court found that the defendant failed to demonstrate that the State's use of his allegedly coerced confession was harmful. Specifically, the court found that, because he had omitted this claim from multiple previous appeals and postconviction petitions, the

defendant had not consistently claimed that his confession was coerced. The court also found a lack of similarity between the defendant's allegations regarding Cassidy's conduct in his case and Cassidy's conduct in the other cases. On that point, the court observed that only one other case involved physical abuse; that in the other cases Cassidy and other officers constructed and provided the interviewees' stories, whereas the defendant's statement contained facts that the officers did not yet know about; that the defendant's case is dissimilar to those of the juvenile defendants for the simple reason that the defendant is not a juvenile; and that the circumstantial evidence that the defendant alleges contradicts his confession is either "minor, speculative, [or] ignore[s] the broader accuracy and consistency of the confession with the facts of the case," undermining the defendant's claim that Cassidy fed him details of his confession. Addressing factors bearing on the voluntariness of a confession, the court further found that the defendant had been read his *Miranda* rights, that the defendant had spent a substantial amount of time outside of the Cassidy's presence, that the defendant had been held in police custody for a reasonable amount of time, that the defendant had military training on interrogation countermeasures, and that the alleged threats and promises of leniency did not weigh in favor of the defendant because there is "no reason to believe the [defendant], an intelligent grown man with military training for psychological warfare, was swayed by the detective's indication the end result would be better if he confessed and showed remorse or that they would continue the interrogation until he confessed." Finally, the court found that admission of the defendant's confession, while valuable, was "non-essential" and harmless within the totality of the evidence presented at trial. This appeal follows.

¶ 23 "To file a successive postconviction petition, a defendant must first obtain leave of court by demonstrating 'cause for his or her failure to bring the claim in his or her initial post-conviction proceedings,' and that 'prejudice results from that failure.' " *People v. Brandon*, 2021 IL App (1st) 172411, ¶ 41 (quoting 725 ILCS 5/122-1(f) (West 2016)). "At the leave-to-file stage, we must take the allegations in the petition and the supporting affidavits as true, unless they are positively rebutted by the trial record." *Id.* ¶ 43 (citing *People v. Robinson*, 2020 IL 123849, ¶ 45). "Leave to file should be granted unless it is 'clear' that the claims 'fail as a matter of law' or that the successive petition is otherwise 'insufficient to justify further proceedings.' " *Id.* (quoting *People v. Smith*, 2014 IL 115946, ¶ 35). "This is a preliminary screening to determine whether defendant's *pro se* motion for leave to file a successive postconviction petition adequately alleges facts demonstrating cause and prejudice." *People v. Bailey*, 2017 IL 121450, ¶ 24 (citing *Smith*, 2014 IL 115946, ¶ 34). "In other words, the court must determine whether defendant has made a *prima facie* showing of cause and prejudice." *Id.* "The denial of a defendant's motion for leave to file a successive postconviction petition is reviewed *de novo*." *Id.* ¶ 13.

¶ 24 We begin our analysis with the cause element. The Act provides that a defendant may show cause "by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2020). The defendant's claim in this proposed successive petition is that his right to due process was violated by the coercion of his confession and its subsequent use at trial. See *People v. Sanders*, 2021 IL App (5th) 180339, ¶ 41 ("A criminal defendant is denied due process of law if his conviction is based, wholly or partially, on the admission of testimony concerning that defendant's involuntary confession."). Part of this claim involves presenting evidence of a "pattern and practice of police

misconduct," and our courts have held that the prior unavailability of such evidence is sufficient to establish cause. See *People v. Blalock*, 2022 IL 126682, ¶ 45.

¶ 25    The defendant alleges that he has established cause in this case because his claim is supported by evidence that was not available when he filed his initial petition. Specifically, he asserts that two of the civil complaints on which he relies did not exist at the time of his initial petition in 2007 and that he could not have reasonably obtained the other evidence because he did not have access to computerized legal research in prison until 2016. In its answer, the State gives short shrift to the defendant's argument on this issue and simply points to the age of the evidence as essentially the only factor. In the State's view, if the evidence predated the defendant's initial petition, then the defendant's recent discovery of that evidence is insufficient to establish cause. But the State's argument misses an important consideration, which is when the defendant gained the ability to discover that evidence.

¶ 26    Indeed, a defendant can establish cause by showing that " 'the factual or legal basis for a claim was not *reasonably available*.' " (Emphasis added.) *People v. Pitsonbarger*, 205 Ill. 2d 444, 460 (2002) (quoting *Strickler v. Greene,* 527 U.S. 263, 283 n.24, (1999)). Accordingly, it does not necessarily matter when the evidence came into being; rather, it is when it became reasonably available to the defendant. The defendant in this case has averred in a sworn affidavit attached to his proposed petition that he did not have internet or computerized research access until 2016 and has not had newspaper access at all. Taking those assertions as true, as we are required to do at the leave-to-file stage, we fail to see how the defendant could have reasonably obtained nearly all of the evidence that he relies on to support his claim, which consists of two federal court orders, five civil complaints, a newspaper article, two settlement summaries, and a fellow prisoner's appellate

briefs. Presumably, he would have had access to a prison law library containing printed court decisions, but only two of the eleven pieces of evidence that he attached to his proposed petition were such decisions. Even then, there is no reason to believe that those two federal district court orders from the cases of Steven Hudson (*Hudson v. Cassidy*, 05 C 5623, 2006 WL 3524420 (N.D. Ill. Dec. 5, 2006)) and A.M. (*U.S. ex rel. A.M. v. Butler*, 98 C 5625, 2002 WL 1348605 (N.D. Ill. June 19, 2002)), were available in print, as neither, according to online Westlaw records, were reported in any of the federal reporters. Indeed, it appears that all of the defendant's evidence could only be obtained with computerized research tools, which the defendant swears he lacked access to at the time of his initial petition. Therefore, because he has alleged that the evidence on which his claim relies was not reasonably available to him and the record does not rebut that assertion, the defendant has made a *prima facie* showing of cause.

¶ 27    While the State only contests the defendant's establishment of cause on the grounds of the age of the defendant's evidence, the circuit court below found that the defendant had not established cause for additional reasons, which we will address in turn. First, it found the defendant's allegations regarding his lack of access to newspaper articles and computerized research tools needed to obtain his newly discovered evidence to have been rebutted by the record, specifically his prior submission of a 2004 *Chicago Sun-Times* article about his case and his statement in a prior filing that Menard Correctional Facility law library has "computer access to the material [he] needs in order to fully extrapolate the issues within [his] postconviction petition." However, for an allegation to be "positively rebutted" by the record, as is required in order to reject a defendant's allegations at the leave-to-file stage (see *Brandon*, 2021 IL App (1st) 172411, ¶ 43), "it must be clear from the trial record that no fact finder could ever accept the truth of that evidence,

such as where it is affirmatively and incontestably demonstrated to be false or impossible." *Robinson*, 2020 IL 123849, ¶ 60. The defendant's possession of a *Sun-Times* article about his own case is hardly conclusive evidence that the *Tribune* article that he cites in support of his present proposed petition was previously available to him. Given that the previously filed article was about his own case, it is equally likely that someone sent the article to him. Additionally, the article that he previously submitted was from the *Sun-Times*, while the article that he cites in support of the present proposed petition is from the *Tribune*. His possession of a *Sun-Times* article, by itself, does not "incontestably" prove that he had access to the *Tribune*. Similarly, the defendant's prior statement regarding his computer access is far too vague to incontestably demonstrate that he had the research tools that he now swears he lacked. We do not know what "computer access" and "material" refer to. The statement is too ambiguous and lacking in certainty to rebut the defendant's averment that he lacked access to the evidence that he seeks to submit with this proposed petition.

¶ 28 Second, the circuit court found that the 1998 *Tribune* article about the Harris and Gilvis murders, which the defendant submitted in support of his motion to relitigate his motion to suppress prior to his second trial, rebutted the defendant's assertion that he previously did have knowledge of Cassidy's pattern and practice of coercing confessions. However, while the article did contain allegations that Cassidy had coerced other confessions, we observe a notable lack of detail regarding the type of evidence that the defendant would need in order to put together a pattern-and-practice claim. Specifically, the article provided the following details about the circumstances surrounding the confessions in the Harris and Gilvis cases: the confessors in the two cases were seven, eight, and eleven years old; the boys were interrogated without a youth officer or parent present; the boys were not Mirandized; the charges in the Harris case were dismissed

following a crime lab report that the article implies exonerated the boys; the boy in the Gilvis case, A.M., testified that "Cassidy and his partner cursed, shouted[,] and thumped his knees, calling him a liar and telling him that if he confessed, they—and God—would forgive him"; A.M.'s conviction was affirmed on appeal, with a dissenting justice, in the article's words, "expressing serious concern the boy's rights were violated"; and A.M. had recently filed a federal civil suit regarding his allegedly coerced confession.

¶ 29    Thus, the article provided very few details regarding Cassidy's pattern and practice of coercing confessions. In fact, it did not include any details about any wrongdoing on Cassidy's part in relation to his interrogation of the boys in the Harris case. Rather, it merely said that the charges were dismissed following an unspecified crime lab report. Further, although the circuit court stated that the article had discussed "findings regarding Cassidy's misconduct," the article actually contained no such findings. Additionally, while the article did mention that A.M. was suing Cassidy, the focus of A.M.'s lawsuit was a lack of probable cause for the arrest and the lack of *Miranda* warnings; it did not concern the type of coercion through force that the defendant claims is at issue here. So, while the article did reveal that Cassidy had possibly coerced confessions in other cases, it did not provide sufficient information supporting a pattern and practice of coercing confessions in the manner that the defendant alleges his was coerced. In other words, if the defendant had raised a coerced-confession claim based on the information contained in the article, it almost certainly would have been dismissed for lack of corroboration and proof. Therefore, we do not believe that it provided the type of knowledge that would negate the defendant's present assertion of cause.

¶ 30 Third, the court found that the petition is barred by collateral estoppel because it is essentially the same claim that the defendant sought to raise in his prior 2013 successive petition. While it is true that the claim is basically the same, the defendant has shown in this proceeding that our affirmance of the denial of leave to file in that proceeding was in error. In that appeal, we held that, "[c]learly, the defendant would have been aware of his allegation that his own confession was coerced, because he made those claims before trial," and that, because he had such knowledge, the defendant was required to explain his failure to raise the claim in his initial petition, which he had not adequately done. *Lee VII*, 2019 IL App (1st) 163308-U, ¶ 20 (unpublished order under Supreme Court Rule 23). However, the supreme court has since disapproved of the reasoning that we employed in that decision. In *Blalock*, the court instead held that a defendant's knowledge of the coercive nature of his own interrogation does not provide knowledge of a pattern and practice and that "newly discovered evidence of police coercion may, depending on the individual circumstances of the case, provide cause for permitting the filing of a successive postconviction petition." 2022 IL 126682, ¶¶ 41–42. It would be fundamentally unfair to find that the defendant's present proposed petition is barred by collateral estoppel when our prior ruling has effectively been overruled.

¶ 31 Lastly, the circuit court found, as we did in *Lee VII*, that the defendant had knowledge of Cassidy's pattern and practice of coercing confessions at the time of his initial petition and that the defendant was required to raise his coerced-confession claim in that initial petition even if he believed that the claim would fail for lack of supporting evidence. Citing the cases of *People v. Guerrero*, 2012 IL 112020, ¶ 20, and *People v. Johnson*, 392 Ill. App. 3d 897, 908 (2009), for the proposition that a defendant must raise an available claim even when the law is against him, the

court found that the defendant's subjective opinion regarding the merits of his claim was not an objective factor that prevented him from raising the claim. We again disagree, as the circuit court's reasoning on this point misses an important distinction.

¶ 32    While it is true that "a defendant must raise [an] issue, even when the law is against him" (*Guerrero*, 2012 IL 112020, ¶ 20), the defendant's failure to raise this coerced-confession claim in his initial petition was not due to unfavorable law; rather, it was due to a lack of factual development and evidence, which can indeed constitute cause. See *People v. Jones*, 2016 IL App (1st) 123371, ¶ 116 ("A defendant's lack of evidence that an officer has committed misconduct in circumstances similar to those of the defendant can serve as cause for failing to fully raise that claim in prior proceedings."). In order to prove that his right to due process was violated by the use of his allegedly coerced confession, the defendant must establish that Cassidy has a pattern and practice of coercing confessions in a similar manner. Without such evidence, his claim would fail. As we have recounted, at the time of his initial petition, the defendant lacked sufficient knowledge and evidence of Cassidy's pattern and practice of coercing confessions, and had he raised a claim based on what he knew at that time, it almost certainly would have failed. We cannot see the logic in requiring a defendant to raise a claim that he lacks the ability to prove. To do so would be a waste of court resources and a waste of time for everyone involved.

¶ 33    Unlike in *Guerrero* and *Johnson*, the issue here is not that the law was against the defendant, the issue is that he lacked facts and evidence. Defendants are required to raise claims even when the law is against them, provided that they can make a good-faith argument that the case law is wrong or should be applied differently, because courts can be persuaded to interpret or apply the law differently. But when a defendant lacks the facts and evidence to support and prove

a claim, he would be required to base the claim on speculation and mere conclusions, and such claims are not allowed under the Act. See *People v. Morris*, 236 Ill. 2d 345, 354 (2010) ("[A] petition alleging nonfactual and nonspecific assertions that merely amount to conclusions will not survive summary dismissal under the Act."). Thus, the situations are different, and the defendant's lack of knowledge and evidentiary support concerning Cassidy's pattern and practice of coercing confessions is a relevant consideration in the cause analysis.

¶ 34    To the extent that the circuit court was worried about defendants holding onto claims and filing them in a piecemeal fashion when they believe that they have enough evidence to support them (see *People v. Davis*, 2014 IL 115595, ¶ 55 ("A defendant is not permitted to develop the evidentiary basis for a claim in a piecemeal fashion in successive postconviction petitions *** .")), we note that the cause-and-prejudice requirement takes care of that concern. If they previously possessed or could have reasonably obtained sufficient evidence and the delay is not justified, they will be denied leave to file. See *id.* If the delay is justified and the claim is supported by previously unavailable evidence, leave will be granted (provided that the defendant also establishes prejudice). See, *e.g.*, *Brandon*, 2021 IL App (1st) 172411, ¶ 62; *People v. Nicholas*, 2013 IL App (1st) 103202, ¶ 42. Accordingly, we do not see the merit in requiring defendants to file speculative and unsupported claims.

¶ 35    Additionally, and separately from these previous considerations, case law makes clear that, even if a defendant has raised a coerced-confession claim previously, the recent discovery of new evidence can establish cause for re-raising the claim in a successive petition. In *Brandon*, the defendant raised a coerced-confession claim in his first successive petition, but did so without sufficient supporting evidence, resulting in the denial of leave to file. 2021 IL App (1st) 172411,

¶¶ 30–31. Seven years later, the defendant sought leave to file a second successive petition re-raising his coerced-confession claim, this time supported by additional newly discovered evidence. *Id.* ¶ 33. The circuit court denied leave to file, finding the issue to be *res judicata*. *Id.* ¶ 36. On appeal, the appellate court reversed and found that the defendant had established cause (*id.* ¶ 62), observing that "a defendant may \*\*\* be granted leave to file a successive petition raising a claim he did raise in an earlier petition, if he has since obtained new evidence to support that claim and can demonstrate cause for the failure to discover and present that new evidence in the earlier proceeding." (Emphasis removed.) *Id.* ¶ 42; see also *People v. Wrice*, 406 Ill. App. 3d 43, 52 (2010) (*Wrice I*) (holding that the prior unavailability of new evidence established cause and allowed the defendant to re-raise his coerced-confession claim).

¶ 36     In this case, the defendant supports his proposed petition with potentially important new evidence in the form of the civil complaints filed against Cassidy by Charles Johnson and Larod Styles, both of which were filed in 2020 and, therefore, did not exist at the time of his initial petition. The Styles complaint, in particular, appears to be a significant piece of new evidence, as it contains a third allegation of physical abuse by Cassidy (adding to Fincher's and Hudson's allegations of physical coercion), arguably establishing a pattern of such conduct and adding significant corroboration to the defendant's allegation of physical abuse. See *Nicholas*, 2013 IL App (1st) 103202, ¶ 42 (holding that the defendant established cause to file a successive petition raising a coerced-confession claim when he had newly discovered evidence that added a "significant detail" and "lend[ed] considerable corroborative weight to defendant's claim"). For its part, although it likely would not provide cause on its own, the Johnson complaint provides additional corroboration of several methods of the coercion that the defendant alleges Cassidy used

on him as well. Accordingly, we agree with the defendant that the discovery of the 2020 civil complaints, particularly the Styles complaint, which did not exist at the time of his initial petition, established a second *prima facie* showing of cause for the present proposed petition.

¶ 37    Having determined that the defendant sufficiently alleged cause for his failure to raise his coerced-confession claim in his initial petition, we now turn to prejudice. "To establish prejudice based on new evidence, [a] defendant must show that the evidence, taken as true, is 'conclusive' in the sense that 'it will probably change the result upon retrial.' " *Brandon*, 2021 IL App (1st) 172411, ¶ 72 (quoting *People v. Jackson*, 2021 IL 124818, ¶ 31). "But when the new evidence relates to the physical coercion of a confession, the calculus alters slightly, as our supreme court has made it clear that the use of a defendant's physically coerced confession as substantive evidence of guilt at trial is *never* harmless error." (Emphasis in original.) *Id.* (citing *People v. Wrice*, 2012 IL 111860, ¶ 71 (*Wrice II*)). For that reason, "the overall strength of the evidence against [a] defendant at trial is irrelevant." *Id.* ¶ 73. Instead, the supreme court has identified three primary factors to consider, with those being whether the defendant had consistently claimed that he was physically abused (*Patterson*, 192 Ill. 2d at 145), whether the defendant's allegations regarding the officer's conduct in coercing his confession are sufficiently similar to other allegations regarding that officer (*Jackson*, 2021 IL 124818, ¶¶ 34–35), and whether the other allegations against the officer were close enough in time to the defendant's interrogation so as to establish that the defendant's interrogation was part of a pattern and practice (*Patterson*, 192 Ill. 2d at 140). We find that the defendant's allegations are sufficient to satisfy each of these factors, and we will address them in turn.

¶ 38    To begin, the defendant has consistently alleged that his confession was coerced and that Cassidy had physically abused him. Indeed, the defendant raised the issue in motions to suppress prior to each of his trials, in his proposed *pro se* brief on direct appeal, in two 1999 postconviction petitions that he withdrew prior to the court issuing a ruling, in a 2001 petition that he stopped prosecuting after being granted leave to amend, and in his proposed 2013 successive petition. In each of these filings, the defendant consistently maintained that Cassidy had coerced his confession by employing a variety of tactics, including physical abuse. Despite this history of claiming coercion, the circuit court found a lack of consistency based on the defendant's omission of this claim from several other filings (the State does not appear to contest the consistency of the defendant's allegations). However, we do not agree that the defendant must allege coercion at every opportunity.

¶ 39    As we have discussed, as a practical matter it makes little sense to require a defendant to raise a claim before he possesses, or can reasonably obtain, sufficient knowledge of the details of the claim or sufficient evidence to substantiate it. Further, requiring a defendant to raise a claim at every opportunity in order to satisfy the consistency requirement would be at odds with the supreme court's decision in *Brandon*, in which the court held that the defendant should have been granted to leave to file a successive petition based on newly discovered pattern-and-practice evidence, despite his having not raised his coerced-confession claim in his initial petition. See *Brandon*, 2021 IL App (1st) 172411, ¶ 28. Rather than requiring that the defendant raise the claim at every opportunity, it seems that the better way to view the consistency requirement would be to look for the absence of inconsistency. In other words, whether the defendant has done anything

inconsistent with his assertion that his confession was coerced. In this case, we see no such inconsistency.

¶ 40    We now turn to the second factor, the similarity between the defendant's allegations and those of the other suspects whose confession Cassidy is alleged to have coerced.

> "[S]imilarity is a critical factor to consider when determining whether new evidence of police misconduct in other cases establishes a pattern and practice of certain behavior. However, the test is not one of exact or perfect identity. Rather, the critical inquiry is simply whether there is sufficient similarity between the misconduct at issue in the present case and the misconduct shown in other cases, such that it may fairly be said the officers were acting in conformity with a pattern and practice of behavior. This determination will necessarily depend on the unique facts of each case." *Jackson*, 2021 IL 124818, ¶ 34.

¶ 41    The defendant's allegations in the present proposed petition demonstrate sufficient similarity with Cassidy's practices in other cases. As we recited earlier, the defendant has alleged in this case that Cassidy struck him in the solar plexus, abdomen, and chest, denied him food, drink, and use of the bathroom, refused to let him call his mother so that she could get him an attorney, threatened that he would do "whatever it took" to get him to confess, and promised him that, if he gave a confession, "they are going to go easy on [him]," "everything would be okay," and he would only get twenty years in protective custody. The cases that the defendant cites for support sufficiently demonstrate that this conduct is in conformity with a pattern and practice of similar behavior.

¶ 42    Specifically, the defendant has alleged that Cassidy and other officers he was working with physically abused three other suspects (including punching and kicking Steven Hudson in the

abdomen, physically hitting Larod Styles, and yanking Gary Fincher's neck chain, pulling his hair, and grabbing his chest); denied one other suspect food and sleep (Styles); denied three other suspects access to an attorney or parent (Johnson, Michael Saunders, and Terrill Swift); threatened violence against three other suspects (Harold Richardson, Thames, and Fincher); and made false promises to six other suspects (A.M., Johnson, Thames, Richardson, Styles, and Fincher). Thus, the defendant had identified multiple other cases in which Cassidy and other officers are alleged to have employed the same tactics that the defendant alleges Cassidy used in his interrogation, including, notably, physically hitting suspects. That is to say, the evidence demonstrates an apparent pattern and practice of denying suspects' requests for attorneys and parents, making false promises of leniency, threatening them with violence or other adverse consequences, and physically abusing them until they confess. Although the other cases are not perfectly identical to each other or to the defendant's allegations of abuse, "the test is not one of exact or perfect identity," but rather similarity. *Id.* Because he cites multiple cases involving the same methods of coercive conduct, we believe that the defendant has sufficiently alleged that Cassidy was acting in accordance with a pattern and practice when he allegedly coerced the defendant's confession.

¶ 43 The State argues that some of these allegations from the other cases should not be considered because Cassidy was not the actual perpetrator but was merely alleged to have been involved in the interrogation. However, case law has not drawn a distinction between an officer who actually abused suspects and one who is merely involved in the interrogation and sits idly by while another commits the abuse. See *People v. Johnson*, 2024 IL App (1st) 220419, ¶ 110; *People v. Whirl*, 2015 IL App (1st) 111483, ¶ 103. Particularly at this preliminary leave-to-file stage, we believe that it is sufficient to allege that Cassidy was among a group of officers who engaged in

the alleged coercive activity, as "[t]here is no reason to believe that an officer willing to cooperate in the coercion of a statement would have scruples against doing so alone." *Johnson*, 2024 IL App (1st) 220419, ¶ 110.

¶ 44 Lastly, we consider the temporal proximity between the defendant's interrogation and the other cases on which the defendant relies. For this inquiry, the supreme court has established the following rules:

"The amount of time separating the incidents is a relevant consideration when determining admissibility. [Citations.] Even incidents that are remote in time can become relevant, however, if the party presenting the evidence can present evidence of other incidents that occurred in the interim. Thus, a single incident years removed has little relevance. However, a series of incidents spanning several years can be relevant to establishing a claim of a pattern and practice of torture." *Patterson*, 192 Ill. 2d at 140.

¶ 45 Cassidy's interrogation of the defendant in this case took place in 1992. The other interrogations that the defendant cites as establishing the above pattern and practice took place in 1994, 1995, and 1998. We have little trouble concluding that these other cases were near enough in time to each other and to the defendant's interrogation to make them relevant in establishing Cassidy's pattern and practice of coercing confessions. See *Brandon*, 2021 IL App (1st) 172411, ¶ 75 (finding that the defendant's interrogation in 1991, together with evidence of other coerced confessions in 1992, 1999, and 2001, established a practice of coercion and abuse); *People v. Reyes*, 369 Ill. App. 3d 1, 19 (2006) (finding that other allegations of abuse occurring in 1983, 1986, and 1993 were relevant in establishing that the defendant's interrogation in 1998 was part

of a pattern and practice). Thus, with all three elements satisfied, the defendant's proposed petition contains sufficient allegations to establish a *prima facie* case of prejudice.

¶ 46    However, the State makes an additional argument that we wish to address. The State goes to great lengths to point out all of the trial evidence that corroborated the defendant's confession and, in the State's view, contradicted his claim that his confession was coerced. However, the problem with this argument is that the State is conflating a coerced confession with a false confession. The defendant's claim does not require him to prove his innocence or that his confession was "false." Even if a defendant actually committed the crime, the coercion of his confession and its use at trial is still a violation of due process. See *Sanders*, 2021 IL App (5th) 180339, ¶ 41 ("A criminal defendant is denied due process of law if his conviction is based, wholly or partially, on the admission of testimony concerning that defendant's involuntary confession."). While it is true that we often associate coerced confessions and false confessions, since virtually all false confessions are coerced, a true confession can also be coerced, as some of the cases that the defendant cites demonstrate. It simply does not matter whether the defendant is actually guilty of the charged offense. If his confession was coerced and involuntary, its use at trial is a violation of his right to due process, and that is what is at issue in the defendant's proposed petition.

¶ 47    Finally, we want to reiterate that at this leave-to-file stage we are conducting a preliminary review, and the defendant will still have much to prove going forward regarding both his own allegations and the allegations from the other cases that he cites. See *People v. Canizalez-Cardena*, 2020 IL App (4th) 180212, ¶ 31 ("[A] court must remember a petitioner is not required to conclusively establish 'cause and prejudice' before the trial court grants the petitioner leave to file his successive petition. Otherwise, the three-stage postconviction process would be

'superfluous.' " (quoting *Bailey*, 2017 IL 121450, ¶ 22)); *Wrice II*, 2012 IL 111860, ¶ 85 ("In cases, such as the present one, where the defendant does satisfy both prongs of the cause-and-prejudice test, the defendant is yet required to establish the allegations set forth in his postconviction petition. Satisfaction of the test merely allows the petition to proceed; it does not relieve the defendant of his evidentiary burden in the postconviction proceeding."). Indeed, the defendant's allegations at this point are just that, allegations, and he has not presented any affidavits from the other suspects interrogated by Cassidy. However, at this stage, allegations are sufficient to establish a *prima facie* case of cause and prejudice. See *Bailey*, 2017 IL 121450, ¶ 24.

¶ 48   In sum, the defendant's proposed successive postconviction petition contained sufficient allegations demonstrating both cause and prejudice. Accordingly, we reverse the circuit court's order denying the defendant leave to file and remand with directions for the court to grant the defendant leave to file the successive petition and to advance the petition to the second stage.

¶ 49   Reversed and remanded with instructions.

No. 1-22-1268

---

*People v. Albert Lee* **2024 IL App (1st) 221268**

---

Appeal from the Circuit Court of Cook County. No. 92 CR 28979
Honorable Stanley J. Sacks, Judge, presiding.

---

Appellant:  James E Chadd, State Appellate Defender
Douglas R. Hoff, Deputy Defender
Brian W. Carroll, Assistant Appellate Defender
Office of the State Appellate Defender
First Judicial District
203 N. LaSalle St., 24th Floor
Chicago, IL 60601
Phone:  312.814.5472

Appellees:  Kimberly M. Foxx, State's Attorney of Cook County
Enrique Abraham, Brian K. Hodes, Margaret M. Smith,
Assistant State's Attorneys; Of Counsel
Richard J. Daley Center, 3rd Floor
Chicago, IL 60602
Phone:  312.603.5496